652 So.2d 745 (1995)
Reginald BERRY
v.
STATE of Mississippi.
No. 91-KA-01074-SCT.
Supreme Court of Mississippi.
March 16, 1995.
*746 Marshall A. Briscoe, Tupelo, for appellant.
Michael C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
BANKS, Justice, for the Court:
Reginald Berry was convicted of possession of cocaine. The proof showed only a momentary handling which we deem insufficient as a matter of law to establish dominion and control. We therefore, reverse and render.

I.
Reginald Berry was indicted on May 24, 1991 by the Grand Jury of Sunflower County on the charge of possession of cocaine with intent to deliver on December 14, 1990. Two men by the names of Wilbert Anderson and James Sharkey were co-defendants in this action, however, Berry was tried alone.
During trial, the State called Officer John Swift, employed with Sunflower County Sheriff's Department, as a witness. He testified that on December 14, 1990, he was headed north on Macon Lake Road and noticed a vehicle parked on the west side of the road with its head lights on. He testified that he pulled over and asked the driver, identified as Wilbert Anderson, if he was having car problems. Anderson stated that he was having starter problems. Swift stated that he got out of his vehicle and shined his flashlight into the car at which time he saw two other people and some "white stuff that seemed to be crack cocaine" on the floorboard or speaker amplifier. Thereafter, he asked everyone to get out of the vehicle and attempted to place them under arrest for possession of crack cocaine. Anderson fled from the scene during the arrest and was never caught. Swift identified the occupants of the vehicle as Berry, Sharkey and Anderson. He further testified that he looked inside the glove compartment and found a "big rock" of crack cocaine wrapped in a napkin. (T 48).
James Sharkey testified as follows: Anderson picked him up and they went to pick up Berry between 5:30 and 6:00 in the afternoon on December 14, 1990. They drove to Moorhead with him riding in the back seat, Berry in the passenger seat, and Anderson driving. Anderson turned down a road where a lot of people were standing and a guy approached the car "asking him [Anderson] was he looking for anything." Anderson parked the car, Anderson and Berry got out of the car and into a Cadillac owned by Steve Conrod. Sharkey said that he remained in Anderson's car. When they returned, he saw Anderson with cocaine, but did not see Berry with any until they were driving down the road and Anderson gave Berry the cocaine and asked him to place it in the glove compartment. Berry complied.
Sharkey testified that he knew cocaine was inside the car and felt that Anderson and Berry knew cocaine was present also. He further testified that to his knowledge, neither Berry nor Anderson had cocaine on them when they exited the vehicle going to the Cadillac.
Sharkey further testified that when they got down the road, it was dark and they parked on the side of the road. They pulled over so that Anderson could verify that the substance was actually cocaine. Anderson pulled out a pipe and started smoking when Officer Swift arrived on the scene. Anderson passed Berry the pipe which he guessed Berry must have dropped because the deputy picked it up.
Sharkey stated that Berry neither said anything about what he planned to do with the cocaine, nor did he know if Berry put any money into the purchase of the cocaine. Sharkey was thereafter impeached by the State when he conceded that he told deputies that he, Berry, and Anderson went to Moorhead *747 so that Berry and Anderson could purchase cocaine to sell back in Humphreys County.
On cross-examination, Sharkey testified that his statement to the Sheriff's Department that Berry and Anderson planned to sell the cocaine in Humphreys was just an assumption based on the fact that both of them got into the Cadillac with Steve Conrod.
After hearing the testimony of Sharkey and Officer Swift, the defense moved for a directed verdict of acquittal on the premise that no evidence was presented that Berry had possession of the cocaine with intent to deliver or transfer. The court reduced the charge from possession of cocaine with intent to deliver to simple possession stating that there was evidence that Berry got out of the car and into the Cadillac at the time of the purchase, and that he had cocaine in his hand at one point and placed it in the glove compartment.
Berry testified in his own behalf. He testified that when they reached Moorhead, all three occupants of the car got out and Anderson stated that he needed to see somebody. He testified that while Anderson went to see whoever it was he wanted to see, he waited by a cafe and did not get into a car with Anderson. He further stated that he did not know why Sharkey testified that Berry and Anderson got into a Cadillac together. When Anderson was ready, Berry testified that they left and Anderson pulled off the road to smoke some cocaine. He stated that he did not know cocaine was in the car or that Anderson possessed cocaine until Anderson started smoking it. He further testified that he neither handled nor possessed the cocaine himself. Berry also stated that Anderson put the drugs into the glove compartment and he did not know what it was because it was wrapped up.
After testimony was taken, the defense moved for a directed verdict arguing that the evidence presented was not sufficient to proceed to the jury as no evidence was presented that he had actual possession of the cocaine; the motion was overruled.
The jury found Berry guilty of possession of cocaine and on October 10, 1991, Berry was sentenced to three years in the Mississippi Department of Corrections. Berry's conviction also violated a prior probation for possession of marijuana and he was ordered to serve that three year sentence also, sentences to run consecutively.
Following the denial of post-trial motions, Berry filed a notice of appeal.

II.
Berry argues that the trial court erred in overruling his motions for a directed verdict and, in the alternative, judgment notwithstanding the verdict because there was insufficient evidence to support his conviction.
Berry argues that although Sharkey testified that he saw Anderson pass cocaine to Berry to put in the glove compartment, the cocaine was wrapped in a napkin, as testified to by Swift, and Sharkey never testified that Berry knew what he put in the glove compartment was cocaine. Berry argues that without proof that he knew what he put in the glove compartment was cocaine, it was not proven that he knowingly and intentionally possessed cocaine as required by Curry v. State, 249 So.2d 414 (Miss. 1971).
Berry also contends that because the State did not prove that he had actual possession of the cocaine, the State had the burden of proving that he constructively possessed the cocaine. Cunningham v. State, 583 So.2d 960 (Miss. 1991). Berry argues that he did not have constructive possession of the cocaine because he denied that he placed cocaine in the glove compartment at all and, furthermore, no evidence was presented that he knew he placed cocaine in the glove compartment of the car as it was wrapped in a napkin.
In Curry, the defendant allowed his vehicle to be driven by another while he rode in the passenger seat. Curry, 249 So.2d at 414. The automobile was stopped by the police and marijuana was found under the dashboard in close proximity to the defendant who was observed placing something under the seat. This Court held that there was *748 sufficient evidence to support the jury's finding that the defendant was in possession of the marijuana as the evidence indicated that the defendant was in the passenger seat of his automobile, in close proximity to where the marijuana was found, and was observed placing something under the seat. This Court reasoned that to prove possession,
there must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion and control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.
Curry, 249 So.2d at 416.
In Cunningham, a passenger in a truck, who did not own the vehicle, was convicted of possession of crack cocaine after cocaine was found in close proximity to him on the floor. Cunningham, 583 So.2d at 960. This Court reversed the conviction holding that
when contraband is found on premises, there must be evidence, in addition to physical proximity, showing the defendant consciously exercised control over the contraband, and absent this evidence, a finding of constructive possession cannot be sustained.
Id. at 962, citing Fultz v. State, 573 So.2d 689, 690 (Miss. 1990). This Court further held that "the state must show additional incriminating circumstances to justify a finding of constructive possession." Cunningham at 962.
The State argues that possession of a controlled substance may be actual or constructive, individual or joint. Wolf v. State 260 So.2d 425, 432 (Miss. 1972). The State further argues that Berry was aware of the presence and character of the cocaine and was consciously and intentionally in possession of it as required by Cunningham, 583 So.2d at 960, and Curry, 249 So.2d at 416. The State argues that Berry's knowledge and intention is evidenced by Sharkey's testimony that Berry and Anderson got out of the car and into the Cadillac after being asked if they were looking for anything. In addition, Sharkey saw Anderson with the cocaine when Berry and Anderson returned to the car, and based on his observations, testified that both Berry and Anderson knew that cocaine was inside the car. Based on the evidence, the State argues that Sharkey's testimony sustains the reasonable inference that Berry participated in the purchase of the cocaine, that he was aware of what it was, and that he exercised dominion and control over it in the automobile when he placed the cocaine in the glove compartment so as to have constructive possession of the cocaine.
In our view, only one of the three inferences is fairly supported. Mere presence does not indicate participation in the purchase. Nor does it support an inference of dominion and control. The State is right that an inference of knowledge could be drawn if the jury believed that Berry was in fact in the car where a drug transaction occurred. The question remains whether there is sufficient evidence to support the conclusion that Berry exercised dominion and control either alone or jointly with others. The car belonged to Anderson and Sharkey's testimony establishes that the primary person handling and making decisions regarding the substance was Anderson. He had it when he returned to the car. He decided to smoke some. He gave directions regarding placing it in the glove compartment. Accepting the inference that Berry knew that it was cocaine in the napkin, the question of his liability for possession is resolved by determining whether his momentary handling of the substance at Andersons's direction is sufficient for a finding of the exercise of dominion and control.
In State v. Callahan, 77 Wash.2d 27, 459 P.2d 400 (1969), the defendant was arrested in his friend's houseboat where he had been staying for two or three days. When officers entered on the boat, they found pills and hypodermic syringes at a desk next to the defendant, and a cigar box filled with drugs was found on the floor next to him. The defendant admitted to handling the drugs earlier that day, but another individual *749 claimed ownership of the drugs. In determining whether the defendant had actual possession of the drugs, the court held that the jury must
find that the drugs were in the personal custody of the defendant. There was no evidence introduced that the defendant was in physical possession of the drugs other than his close proximity to them at the time of his arrest and the fact that the defendant told the officers that he had handled the drugs earlier. Since the drugs were not found on the defendant, the only basis on which the jury could find that the defendant had actual possession would be the fact that he handled the drugs earlier and such actions are not sufficient for a charge of possession since possession entails actual control, not a passing control which is only a momentary handling. See United States v. Landry, 257 F.2d 425, 431 (7th Cir.1958).
The court then determined that there was insufficient evidence for the jury to determine beyond a reasonable doubt that the defendant had constructive possession of the drugs. The court reasoned that there must be substantial evidence that he had dominion and control over the drugs. Callahan 459 P.2d at 402. The court held that a review of its constructive possession cases revealed that in each case the defendant was in dominion and control of either the drugs or the premises where the drugs were found. Finding that the defendant was not in dominion and control of the premises, the court looked to the following evidence relating to the defendant's possession of drugs:
1. Two books on narcotics, two guns and a set of broken scales belonging to the defendant were found at the houseboat.
2. Defendant had been staying on the houseboat for the preceding 2 or 3 days, but was not a tenant, cotenant, or subtenant thereon.
3. Most of the drugs were found near the defendant.
4. Defendant admitted that he handled the drugs earlier in the day.
The court found that this evidence was insufficient to make a jury question on the issue of constructive possession as the evidence was purely circumstantial, and undisputed direct proof placed exclusive possession in some other person.
In United States v. Landry, 257 F.2d 425 (7th Cir.1958), the defendant was a drug addict and lived in an apartment that was also occupied by a woman named Dolores. Drugs were found in the apartment and Dolores made the statement that she was keeping them for the defendant because he would take them all at one time if she let him have them. Citing United States v. Wainer, 170 F.2d 603, 606 (7th Cir.1948) (case where defendant arranged for tavern, which he had no connection with, to purchase beer that he did not know was stolen. As defendant never touched beer or paid for it, he was held not to have possession of it), the court stated:
[t]o "possess" means to have actual control, care and management of, and not a passing control, fleeting and shadowy in its nature.
Landry at 431. Because Dolores issued the drugs to the defendant, the court found that she had actual control, care and management over the drugs, and not the defendant. "The suggestion that he might previously have had possession of it barely approaches the dignity of a guess." Id.
In State v. Staley, 123 Wash.2d 794, 872 P.2d 502 (1994), the defendant was a musician and received tips in a jar. Upon emptying the jar, he alleges that he found a glass vial containing cocaine. He placed the cocaine in his pocket and upon being stopped by the police later, alleged that he found it in his jar and it wasn't his. The defendant assigned error to the court's denial to give the instruction that fleeting, momentary, temporary or unwitting possession of cocaine is not unlawful. On appeal, the court held defendant's assignment of error was without merit and inaccurately stated the law as the duration of the handling is only one factor to be considered in determining whether control, and therefore possession, has been established. Staley 872 P.2d at 506. The court reasoned:

Callahan did not create a legal excuse for possession based on the duration of the *750 possession. Rather, evidence of brief duration or "momentary handling" goes to the question of whether the defendant had "possession" in the first instance. Depending on the total situation, a "momentary handling" along with other sufficient indicia of control over the drugs may actually support a finding of possession. See State v. Partin, 88 Wash.2d 899, 906 [567 P.2d 1136] (1977) (court will look at the totality of the situation to determine if there is substantial evidence tending to establish circumstances from which dominion and control may be inferred). [Court found defendant had constructive possession of cocaine where he had been seen at residence where drugs were found on numerous occasions, he told people that he could be found there, and people called the residence asking for him].
Alabama takes a different approach to whether a defendant has possession of drugs. In Maples v. State, 44 Ala.App. 491, 214 So.2d 700 (1968), the defendant and his companion were stopped by the police. His companion handed him a bottle of pills and the defendant placed it on a ledge. At trial, the defendant argued that the bottle of pills should not have been introduced in evidence because such a brief handling of the pills did not as a matter of law constitute possession. Citing Harbin v. State, 210 Ala. 55, 97 So. 426 (1923), and Sutton v. State, 170 Tex. Crim. 617, 343 S.W.2d 452 (1961), the court held that the question of the defendant's intent in accepting the pills from his companion was for the jury to determine.
In Harbin, the defendant was convicted of possessing intoxicating liquor in violation of law, after having a jug of liquor in his arms. The defendant argued that the liquor belonged to his companion and his companion asked him to join in a drink. The defendant asked for an instruction that if the jury finds that he only went to a place for the purpose of taking a drink of whiskey and that the whiskey belonged to his companion and that his companion was in possession of the whiskey, then he must be found not guilty. The court rejected this instruction reasoning that
possession prohibited includes any possession by manucaption [handling] or physical dominion, of however brief duration, and in whatever capacity the possession may be held, if it be for the use, benefit or enjoyment of himself or any other person, and not merely for the purpose of inspection or destruction.
In Sutton, an undercover agent requested that the defendant procure some heroine and waited for the defendant in a apartment. After the defendant made a call, a woman came to the apartment and gave the defendant 3 capsules of heroine. The defendant immediately gave the heroine to the agent and was thereafter charged with possession of heroine. At trial, the defendant argued that the evidence was insufficient to show that she possessed the heroine because she only had it in her possession for 25 seconds before giving them to the agent. The court held "[t]he duration or length of time the capsules were under appellant's control would not determine the question of her possession of the same." Sutton, 343 S.W.2d at 454.
Analyzing the present case under Callahan, and Staley, Berry is not guilty of possession of cocaine. The present case is similar to Callahan. Like the defendant in Callahan, Berry was not in actual possession of the drugs when they were found, but previously handled them by placing them in the glove compartment at his friend's [Wilbert Anderson's] direction. As the court ruled in Callahan, this prior momentary handling was insufficient to charge him with actual possession.
In order to determine if Berry had constructive possession of the drugs found in the glove compartment, this Court must look at the totality of the circumstances as required by the holding in Staley (which court explained Callahan's holding in relation to constructive possession cases.) Under Staley, there must be a finding that Berry had some type of control over the drugs under the totality of the circumstances, and his prior momentary handling of the drugs is only a factor to be considered. The following is evidence relating to Berry's connection with the cocaine:
1) He rode in the car with Anderson up to Moorhead.

*751 2) He and Anderson got out of the car and into a yellow Cadillac where the drugs were purchased.
3) They returned to the car and Anderson handed him the cocaine wrapped in tissue to place in the glove compartment.
4) Berry placed the drugs in the glove compartment at Anderson's request.
These facts are not sufficient to evince that Berry had any control over the drugs under Callahan. He simply place them in the glove compartment at Anderson's request, in Anderson's car, and in Anderson's presence. There was no evidence that he owned the drugs, paid for them, or controlled them in any manner.
The factor of control is essential. Here unlike in Maples, when Berry momentarily handled the substance it was with explicit direction as to immediate disposition. In Maples the person receiving the substance received it without direction, leaving it within his discretion as to disposition. Thus, even though possession was momentary there, the circumstances of possession were such that dominion and control could be inferred.
Possession, no matter how fleeting, is sufficient to sustain a conviction. Possession is defined, however, in terms of the exercise of dominion and control. We hold only, that in the circumstances here presented, the momentary handling was insufficient to support an inference of dominion and control.
Because we find this issue dispositive of the entire case we pretermit discussion of the other issues raised by Berry. The judgment of the trial court is reversed and this case is remanded for entry of judgment of acquittal.
REVERSED AND RENDERED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, J., concur.
SMITH, J., dissents with separate written opinion joined by McRAE and JAMES L. ROBERTS, Jr., JJ.
PITTMAN, J., not participating.
SMITH, Justice, dissenting:
The majority writes that the only evidence against Berry shows a "momentary" handling by Berry of the cocaine. According to the majority, this fact is insufficient as a matter of law to establish dominion and control over the drugs. However, the majority ignores the other factual circumstances testified to by eyewitness James Sharkey, a codefendant in this action.
Sharkey testified that on December 14, 1990, he, Berry and Wilbert Anderson left Belzoni, Mississippi in Anderson's vehicle and traveled to Moorhead with Anderson driving, Berry in the front passenger's seat and Sharkey in the back seat. Sharkey testified that he told deputies after his arrest that he, Berry, and Anderson went to Moorhead so that Berry and Anderson could purchase cocaine to sell back in Humphries County. Sharkey testified that Anderson turned down a road in Moorhead where a group of people were standing and a guy approached the car "asking him [Anderson] was he looking for anything." Sharkey stated that Anderson and Berry got out of Anderson's car and into a Cadillac owned by Steve Conrod; Sharkey remained in Anderson's car. Anderson and Berry did not have any cocaine when they exited Anderson's car. When they returned Sharkey observed that Anderson had cocaine in his possession. While driving down the road Anderson gave Berry some cocaine and asked him to place it in the glove compartment on the passenger's side of the vehicle. Berry complied. Anderson parked on the side of the road and commenced to verify the substance by smoking some of it in a pipe. Officer John Swift, a Sunflower County Deputy Sheriff, approached the car, whereupon Anderson handed the pipe of cocaine to Berry and Sharkey guessed that Berry dropped it because Swift picked it up. Sharkey admitted on cross-examination that his statement to the deputies that Berry and Anderson planned to sell the cocaine in Humphries County was just an assumption based on the fact that both of them got into the Cadillac with Conrod.
Officer Swift testified that he observed some "white stuff that seemed to be crack cocaine" on the speaker amplifier in the *752 floorboard of Anderson's vehicle and that he found a "big rock" of crack cocaine in the glove compartment.
J.C. Smiley of the crime lab tested the seized contraband and conducted tests upon the substance. The test results were positive for cocaine.
Berry denied getting into Conrod's vehicle along with Anderson; denied knowing anything about the cocaine until Anderson struck a light and started smoking some, and denied possessing the cocaine himself. Berry further denied seeing a razor blade and cocaine on the amplifier. Berry testified that it was Anderson who reached across and placed the cocaine in the glove compartment while driving the vehicle.
The issue, although admittedly close, was a proper question for the jury to determine. The evidence of the State is sufficient. When reviewing the legal sufficiency of evidence on appeal this Court has held that:
[w]e give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof, reasonable and fairminded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.
Garrett v. State, 549 So.2d 1325, 1331 (Miss. 1989). See also Campbell v. State, 566 So.2d 475, 476 (Miss. 1990).
In Cunningham v. State, 583 So.2d 960 (Miss. 1991) and Curry v. State, 249 So.2d 414 (Miss. 1971), this Court clearly held that the State is not solely limited to proving possession of narcotics through the fact that a defendant was aware of the presence and character of the substance and was consciously and intentionally in possession of it. The Court held that the State can also show constructive possession through proof that the defendant exercised dominion and control over the substance. Cunningham, 583 So.2d at 962; Curry, 249 So.2d at 416. The Court further held that constructive possession may be shown by incriminating circumstances. Id.
In the present case, the facts do not support the inference that Berry had actual possession of the cocaine, as the cocaine was not found in Berry's actual possession, but on the amplifier located in the floorboard and in the glove compartment of Anderson's car. However, the evidence does support the inference that Berry was in constructive possession of the cocaine in the glove compartment based on incriminating circumstances.
Sharkey testified about the purchase and ensuing events in particular detail. He testified that when they were in Moorhead, a man approached the vehicle in which he, Berry, and Anderson were riding and asked if they "were looking for something", Berry and Anderson got out of the car and entered a yellow Cadillac. Sharkey knew that the owner of the yellow Cadillac was Steve Conrod. Sharkey stated that neither Anderson nor Berry had cocaine in their possession when they entered Conrod's Cadillac. Yet, when Berry and Anderson returned to the car, Anderson had some cocaine in his possession. Anderson, while driving, handed Berry some of the cocaine to store in the glove compartment, and Berry complied. Sharkey's testimony clearly indicated that Berry knowingly and intentionally placed the cocaine in the glove compartment located on the passenger's side of the vehicle. Berry was seated on the front passenger's side in closer proximity to the cocaine than the other occupants of the vehicle.
Because Sharkey's testimony indicates that Berry got into the Cadillac for the purpose of buying cocaine, and Anderson in fact returned with cocaine, the jury could have reasonably inferred that Berry knew that he was placing cocaine into the glove compartment. Sharkey was questioned as follows: "[a]sked who to stick what in the glove compartment?" Sharkey responded, "Asked Reginald [Berry] to place the cocaine in the glove compartment." Sharkey's testimony *753 particularly sustains the reasonable inference that Berry participated in the purchase of the cocaine, that he was aware that the substance was in fact cocaine, that he was in the closest proximity to the cocaine, and that he continued to exercise dominion and control over it in the automobile. Berry draws attention to the fact that he contradicted Sharkey's testimony by stating that he neither got into the Cadillac nor placed the cocaine into the glove compartment. However, the jury was to determine the weight and credibility to be accorded the testimony. Fisher v. State, 481 So.2d 203, 212 (Miss. 1985) (murder case holding that "matters regarding the weight and credibility to be accorded evidence are to be resolved by the jury"). The jury obviously decided these issues against Berry and in favor of the State.
The present case is distinguishable from Cunningham and more similar to Curry in that Berry, like Curry and unlike Cunningham, was not only in close proximity to the cocaine in the glove compartment, but was also in constructive possession of the cocaine as indicated by all of the surrounding circumstances. Sharkey's testimony was that Berry, accompanied by Anderson, went to the yellow Cadillac to purchase and did purchase cocaine and that Berry subsequently received the cocaine from Anderson and actually placed it in the glove compartment in close proximity to where he, Berry was seated in the vehicle.
The facts and inferences do not point in favor of Berry with sufficient force that reasonable men could not have found Berry guilty, which is the standard required to reverse his conviction on grounds of legal insufficiency of the evidence. Garrett, 549 So.2d at 1331.
The proof sufficiently supported the jury verdict that Berry was guilty. The jury could infer that Anderson and Berry jointly purchased, possessed and controlled the cocaine from Sharkey's testimony. Possession of a controlled substance may be either actual, constructive, individual or joint. Wolf v. State, 260 So.2d 425, 432 (Miss. 1972). Additionally, two or more persons may exercise joint dominion or control over the same contraband. Arnett v. State, 532 So.2d 1003, 1011 (Miss. 1988); Wolf, 260 So.2d at 432. See also, Shaw v. State, 248 Miss. 823, 161 So.2d 629 (1964); Johnson v. State, 246 Miss. 182, 145 So.2d 156 (1962).
Berry was the last occupant in the vehicle to exercise dominion and control over the cocaine in the glove compartment. Berry was in constructive possession of the cocaine, "was aware of the presence and character of the particular substance and was consciously and intentionally in possession of it." Cunningham, 583 So.2d at 962, quoting Curry, 249 So.2d at 416.
It is certainly reasonable considering the totality of all the facts and circumstances in evidence that Berry was in constructive possession of the cocaine individually or perhaps jointly with Anderson.
I respectfully dissent.
McRAE and JAMES L. ROBERTS, Jr., JJ., join this opinion.