## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-KA-00686-SCT

*DARYL L. NAYLOR, a/k/a DARYL LOVE NAYLOR*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/05/97 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DONALD W. BOYKIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND RENDERED - 12/3/98 |
| MOTION FOR REHEARING FILED: | 12/17/98 |
| MANDATE ISSUED: | 4/12/99 |

### BEFORE PITTMAN, P.J., ROBERTS AND SMITH, JJ.

### PITTMAN, PRESIDING JUSTICE, FOR THE COURT:

¶1. Daryl Naylor was indicted along with Jeff Jones on August 6, 1996, for the possession of cocaine with intent to distribute in violation of Miss. Code Ann. § 41-29-139 (1993). The indictment was amended before trial enhancing the penalty under Miss. Code Ann. § 41-29-152 (Supp. 1994), which provides for a possible double penalty for violators of Miss. Code Ann. § 41-29-139 (1993) who are in possession of a firearm at the time of the arrest. Naylor and Jones were tried together starting on March 20, 1997 in the Circuit Court of the First Judicial District of Hinds County, and the jury returned a guilty verdict. Naylor was sentenced on May 5, 1997 to a term of fifteen (15) years, with ten (10) years suspended and three (3) years of supervised probation.

¶2. Naylor filed a Motion for *j.n.o.v.* or in the alternative a new trial on May 6, 1997, which was denied by the trial court. Naylor timely filed his Notice of Appeal to this Court seeking a new trial or in the alternative a reversal and rendering of his conviction. He alleges the following errors for this Court's consideration:

### I. THE VERDICT OF THE JURY WAS UNSUPPORTED BY AND CONTRARY TO THE

**EVIDENCE, AND THE COURT SHOULD HAVE GRANTED NAYLOR'S PEREMPTORY INSTRUCTION AND MOTIONS FOR DIRECTED VERDICT.**

**II. THE TRIAL COURT ERRONEOUSLY DENIED NAYLOR'S "TWO-THEORY" INSTRUCTION.**

**III. THE COURT SHOULD HAVE GRANTED NAYLOR'S CHALLENGES FOR CAUSE OF VENIRE MEMBERS, BOONE, EVERETT, WHITE, WILSON, AND HAYNES.**

**IV. THE TRIAL COURT ERRED BY REQUIRING NAYLOR AND JONES TO AGREE UPON SIX PEREMPTORY CHALLENGES.**

**V. THE TRIAL COURT SHOULD HAVE GRANTED JURY INSTRUCTION DN-6.**

**VI. THE TRIAL COURT SHOULD HAVE SUSTAINED NAYLOR'S MOTION OBJECTING TO REFERENCE TO DRUG PARAPHERNALIA DURING THE PROSECUTION'S OPENING STATEMENT.**

**VII. THE TRIAL COURT ERRED IN DENYING NAYLOR'S OBJECTION TO IMPROPER CLOSING ARGUMENTS BY THE ASSISTANT DISTRICT ATTORNEY.**

## STATEMENT OF THE FACTS

¶3. The State called Detective Steven E. Wilson of the Jackson-Hinds County Drug Enforcement Unit as its first witness. At the time of trial, Wilson had been employed with the Jackson Police Department for fourteen years, and had been working narcotics for approximately twelve of the fourteen.

¶4. On September 19, 1995, Detective Wilson and seven other officers served a search warrant at 2311 Woodlawn Street. Before arriving at the house, it was decided that four officers would approach the front of the house, while the other four attempted to enter from the back. This type of entry helps to ensure the element of surprise, preventing the occupants from arming themselves or destroying contraband.

¶5. On his approach to the house, Detective Wilson noticed that someone was peering out the front window through a slightly parted curtain. When that person saw the police, the curtain closed very quickly.

¶6. Detective Wilson, and three other officers proceeded to the rear of the house, and entered. As soon as he entered the house, Detective Wilson heard a toilet flushing. From his past experience, Detective Wilson assumed contraband was being destroyed. Detective Wilson found and entered the bathroom. When he entered, Naylor was jumping into the bathtub behind the partially open shower curtain and Jones was kneeling in front of the toilet. Jones was shaking a plastic bag into the toilet with his right hand, while frantically flushing the toilet with his left. Detective Wilson identified himself as a police officer, and attempted to pull Jones away from the toilet. Detective Wilson's hand slipped from Jones's shoulder, and Jones continued to try to flush the toilet and shake the bag.

¶7. Detective Wilson finally pushed Jones away from the toilet, and Jones jumped into the bathtub with Naylor. Jones dropped the plastic bag out of a small window located inside the bathtub area. Detective Wilson called for help, and Detective Nations entered the bathroom and helped Detective Wilson secure Jones and Naylor. Detective Wilson then instructed Sergeant Renfroe to go outside and retrieve the plastic

bag that Jones had thrown out of the bathroom window.

¶8. Sergeant Renfroe did recover the plastic bag, and Detective Wilson identified it as the same bag that Jones had been shaking into the toilet. Detective Wilson testified that the plastic bag appeared to contain crack cocaine which had gotten wet.

¶9. After securing Jones and Naylor in the bathroom, Detective Wilson discovered that three other individuals had been secured by the officers who had entered the front entrance of the house. The individuals were a female, Tamika Wilson, and two males, Charles Bergess and Bill Howard.

¶10. The officers then conducted a search of the premises. Three loaded firearms were recovered from the bedroom. Unused ammunition for each of the guns was also recovered. In addition to the weapons, the officers also recovered a wallet from the bedroom closet which contained Naylor's identification. Detective Wilson recovered the driver's license, social security card, and birth certificate of Charles Bergess from the bedroom dresser.

¶11. On redirect, Detective Wilson testified that pocket scales were also recovered from the house. The scales recovered are common paraphernalia that narcotics users and dealers carry.

¶12. Sergeant Steve Renfroe had worked for the Jackson Police Department for twenty years, with six of those years spent in the narcotics unit. Sergeant Renfroe usually maintains the inventory of all evidence collected when a search warrant is served. Sergeant Renfroe was present when the search warrant in this case was served. He recounted the events of that search in the same manner as Detective Wilson.

¶13. Sergeant Renfroe identified the plastic bag containing white rocks that he recovered outside the bathroom window. Additionally, Sergeant Renfroe identified two walkie-talkies that were recovered from the top drawer of the bedroom dresser. Two other walkie-talkies were recovered from the middle drawer of the same dresser. Sergeant Renfroe testified that walkie-talkies are commonly used by sophisticated narcotics traffickers as a communication between the lookout and the narcotics vendors.

¶14. Sergeant Renfroe testified that the hand-held scales were recovered from atop the refrigerator in the kitchen. According to Sergeant Renfroe, hand-held scales are the most basic and essential tool used by narcotics sellers, and he had found them in almost every drug case he had worked.

¶15. Sergeant Renfroe also testified concerning identification found belonging to Jones. He identified a Capitol Cablevision bill addressed to Jones at 2311 Woodlawn Street. Finally, Sergeant Renfroe identified a metal detector recovered from the living room, which is commonly used by sophisticated drug dealers to screen buyers for weapons or wires.

¶16. Detective Richard Nations, who also participated in the search of the premises, further corroborated the testimony of Detective Wilson and Sergeant Renfroe. Additionally, Detective Nations testified that he recovered $748.00 in cash from the pocket of Naylor. Detective Nations stated that it is common to find large sums of cash when serving warrants such as this. Detective Nations also recovered $85.00 in cash and Jones's identification from a pair of blue jeans in the bedroom.

¶17. John Dial, with the Jackson Police Department's crime lab, analyzed the substance in the plastic bag recovered by the officers, and determined that it was in fact cocaine. The plastic bag contained 9.4 grams or approximately one-third of an ounce.

¶18. The State then rested its case, and Naylor moved for a directed verdict. Naylor argued that no evidence had been presented by the State showing that he had either actual or constructive possession of the cocaine.

¶19. As for the defense case, Naylor's attorney, Donald Boykin, called Vicki Griffin. She testified that she is Naylor's aunt. The day before Naylor was arrested, Griffin gave him $750.00 to hold for her. She had gotten the money from her credit union and intended to buy Christmas gifts with it. She gave the money to Naylor because she had a bad habit of playing bingo and going to casinos. Griffin also testified that Naylor lived with his girlfriend, Tamika Wilson, and their two children, as well as Griffin's brother at 2203 Peace Street.

¶20. Jeff Jones testified on his own behalf and explained why he owned certain pieces of evidence confiscated during the search. Jones stated that he owned the scales because he had used them to weigh jewelry and other items at his previous job in a pawn shop. Jones identified the metal detector as belonging to a friend of his who used to work for Wackenhut, and who had been staying at Jones's house. Jones also identified the recovered shotgun as belonging to him. He had purchased it from a pawn shop on Terry Road for his protection a couple of months before he was arrested, and it had never been shot. He testified that the gun entered into evidence did not appear the same as his gun before it was taken from his house. Jones also identified the walkie-talkies recovered in the house. He stated that he bought them at Radio Shack and that they were not used in drug trafficking. He just bought them for fun.

¶21. Jones testified that on the day of the raid, at around 12:30 p.m., he was about to take a bath. Naylor and his girlfriend, Tamika Wilson stopped by Jones's house, and Jones asked Naylor to give him a haircut. While Naylor was cutting Jones's hair with a pair of hair clippers, the officers entered the bathroom. Jones testified that Naylor was never in the bathtub. He said the water in the bathtub was running, that he was dressed in his underwear, and that Naylor was fully clothed.

¶22. On cross-examination, Jones denied that he ever had the plastic bag containing cocaine and that he was trying to flush it down the toilet.

¶23. The defense rested after Jones's testimony. Naylor then renewed his motion for a directed verdict. The court heard arguments concerning jury instructions, closing arguments were had, and the case was submitted to the jury for its deliberation. The jury returned a verdict of guilty for both Naylor and Jones.

**DISCUSSION OF THE ISSUES**

### I. THE VERDICT OF THE JURY WAS UNSUPPORTED BY AND CONTRARY TO THE EVIDENCE, AND THE COURT SHOULD HAVE GRANTED NAYLOR'S PEREMPTORY INSTRUCTION AND MOTIONS FOR DIRECTED VERDICT.

¶24. Naylor argues that the trial court erred in not granting him a directed verdict or a peremptory instruction. A motion for directed verdict challenges the legal sufficiency of the evidence offered to that point of the trial to sustain a guilty verdict. Following the denial of his motion for a directed verdict, Naylor offered evidence in his defense, when his attorney called his aunt, Vicki Griffin, to testify. As a result, Naylor has waived his challenge to the sufficiency of the State's evidence. ***Stringer v. State,*** 557 So. 2d 796, 797 (Miss. 1990).

¶25. However, as this Court stated in *Stringer,* Naylor "'...has [not] waived his right to challenge the weight or sufficiency of the evidence to sustain the judgment against him.'" *Stringer v. State,* 557 So. 2d at 797 (quoting *Clements v. Young,* 481 So. 2d 263, 268 (Miss. 1985)). Therefore, this Court considers all of the evidence offered in determining its sufficiency.

> When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence -- not just that supporting the case for the prosecution-- in the light most consistent with the verdict. We give prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.

*McFee v. State,* 511 So. 2d 130, 133-34 (Miss. 1987)(citing *Gavin v. State,* 473 So. 2d 952, 956 (Miss. 1985); *May v. State,* 460 So. 2d 778, 781 (Miss. 1984)).

¶26. The issues to be decided by this Court are whether the State proved that Naylor had possession of the cocaine and if so whether he had the intent to distribute it. The threshold issue is the question of possession. Naylor contends that the State did not prove that he was either in actual or constructive possession of the cocaine beyond a reasonable doubt.

¶27. Because Naylor was not caught in actual possession of the cocaine, but was only located in the bathroom next to Jones who had actual possession, the State was required to prove that Naylor had constructive possession. In *Jones v. State,* 693 So. 2d 375, 376 (Miss. 1997), this Court discussed the theory of constructive possession stating that:

> Since Jones was not caught in actual possession, the rules concerning constructive possession come into play, as stated by this Court in *Pool v. State,* 483 So. 2d 331, 336-37 (Miss. 1986);

> The theory of constructive possession has been explained, in *Curry v. State,* 249 So. 2d 414 (Miss. 1971), as follows:

> [T]here must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject due to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances. *Id.* at 416.

> The theory was further defined in *Hamburg v. State,* 248 So. 2d 430 (Miss. 1971), that "one who is the owner in possession of the premises...is presumed to be in constructive possession of the articles found in or on the property possessed." *Id.* at 432. This presumption is rebuttable, however, and does not relieve the State of its burden to prove guilt beyond a reasonable doubt. *Id.* Thus, "[w]here the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the

contraband."*Powell v. State,* 355 So. 2d 1378, 1379 (Miss. 1978). See also *Keys v. State,* 478 So. 2d 266, 268 (Miss. 1985).

¶28. In *Jones,* supra, this Court found that the evidence of constructive possession was insufficient where Jones was a passenger in a car in which marijuana was found. This Court found that his presence in the car was the only evidence connecting him to the marijuana. Therefore, the Court reversed and rendered his conviction because the trial court erred in not granting Jones's motion for a directed verdict. *Id.* at 377.

¶29. In *Berry v. State,* 652 So. 2d 745, 751 (Miss. 1995), this Court reversed and rendered Berry's conviction for possession of cocaine where the only evidence connecting him to the cocaine was that he rode in the car in which the cocaine was located and placed the cocaine in the glove compartment at the request of the driver of the car. This Court found the facts insufficient to prove that Berry had exercised any control over the drugs such that he was in constructive possession of them.

¶30. In *Ferrell v. State,* 649 So. 2d 831 (Miss. 1995), this Court again reversed and rendered a conviction for possession of crack cocaine where the State provided insufficient evidence that Ferrell, who was not the owner of the car in which the drugs were found, possessed the contraband. The Court noted that Ferrell did have dominion and control over the car, but that because he was not the owner of the car, "the State was required to establish additional incriminating circumstances in order to prove constructive possession."*Ferrell,* 649 So. 2d at 835. Further, the Court stated:

> By definition, the State must show additional circumstances that are actually incriminating in order to establish constructive possession. The circumstances cited in this case in no way appear incriminating. No drug paraphernalia was found in the car, Ferrell was not on drugs at the time he was arrested, and his fingerprints were not found on the matchbox. He was merely seated in the car next to what by all accounts appeared to be an ordinary matchbox...

*Id.*

¶31. This Court again confronted the issue of constructive possession in *Miller v. State,* 634 So. 2d 127 (Miss. 1994). In that case, the Court found the evidence sufficient to convict Miller of possession of cocaine. The facts showed that Miller was arrested by a patrol officer on two outstanding warrants. Upon doing a pat-down for weapons, the officer handcuffed Miller and placed him in the patrol car. The officer had felt no weapons but had felt what he thought was a matchbox, some keys, and some coins. At the police station, Miller was searched, and the officer found no matchbox. He returned to his patrol car, and found under the seat a matchbox containing twelve rocks of crack cocaine. *Id.* at 128. The arresting officer testified that standard operating procedure required him to search his patrol car when he came on duty. He had also searched his car after he had taken the one other arrestee of the day into custody prior to Miller. He testified that his patrol car was locked while he took Miller into the station. This Court found that the proof, as established primarily by the arresting officer's testimony, was sufficient because the proof showed that Miller was the only person who had recently been in the area where the drugs were found and who had the opportunity to leave them there. *Id.* at 130.

¶32. In the case *sub judice,* the only evidence linking Naylor to the cocaine is that he was in close proximity to it when he was found in the bathroom. The State did not prove that he lived at the house where the drugs were found, therefore the State was required to provide some competent evidence that connected Naylor to the cocaine. The only other evidence admitted against Naylor was that his wallet was found in a

closet which contained his identification, and he was in possession of $748.00 in cash. Under Mississippi law, this evidence was insufficient to prove that Naylor possessed cocaine. If Naylor did not have constructive possession of the cocaine, then he could not have had the intent to distribute the cocaine. Therefore, we must reverse and render this case and Naylor must be discharged.

¶33. All remaining issues presented for our review are moot and will not be discussed.

## CONCLUSION

¶34. This case is reversed and rendered because the State failed to prove that Naylor had constructive possession of the cocaine at issue. Therefore, the jury's verdict should not stand.

¶35. **REVERSED AND RENDERED; APPELLANT DISCHARGED.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS, McRAE, ROBERTS, SMITH, AND MILLS, JJ., CONCUR. WALLER, J., NOT PARTICIPATING.**