# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-KA-00150-COA

CHRISTOPHER LOWELL JONES A/K/A
CHRISTOPHER JONES A/K/A CHRISTOPHER
L. JONES

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

DATE OF JUDGMENT:           02/10/2020
TRIAL JUDGE:           HON. MARK SHELDON DUNCAN
COURT FROM WHICH APPEALED:  LEAKE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:    OFFICE OF STATE PUBLIC DEFENDER
           BY: JUSTIN TAYLOR COOK
ATTORNEY FOR APPELLEE:    OFFICE OF THE ATTORNEY GENERAL
           BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:      STEVEN SIMEON KILGORE
NATURE OF THE CASE:      CRIMINAL - FELONY
DISPOSITION:           AFFIRMED - 05/04/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE WILSON, P.J., GREENLEE AND WESTBROOKS, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.    Following a jury trial, Christopher Jones was convicted of two counts of transferring a controlled substance for handing another man a fake soda can containing cocaine and methamphetamine. However, the jury found Jones not guilty of possession of a firearm by a convicted felon. On appeal, Jones argues that the evidence was insufficient to show that he knew there were drugs in the fake soda can or that he transferred possession of the can. Jones also argues that under the doctrine of "retroactive misjoinder," he is entitled to a new trial on the drug charges because the jury found him not guilty on the firearm charge. We

find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On January 24, 2019, Agent Clay McCombs of the Mississippi Bureau of Narcotics assisted the Carthage Police Department in an investigation. Jones was a person of interest in the investigation, and McCombs had known Jones for many years. McCombs learned that there was an active warrant for Jones's arrest,[1] and he saw Jones and two other males in the parking lot of the Sonic Drive-In on Highway 35 in Carthage. McCombs turned on his blue lights, parked at the Sonic, and exited his vehicle. He then called to Jones, "Chris, come here. Let me talk to you." Jones was only a short distance from McCombs at the time.

¶3. When he saw McCombs, Jones turned toward one of his companions, later identified as Sammy Ford, "and they put their chests together." McCombs thought he saw "Jones hand [Ford] something," but McCombs "couldn't tell exactly what it was" because Ford was wearing a big jacket. McCombs then said again, "Come here, Chris." At that point, Jones "mumbled something" to Ford and then "handed a yellow can to . . . Ford."

¶4. McCombs then told Ford to hand over the yellow can, and Ford complied. The can appeared to be an unopened twelve-ounce can of Squirt soda, but McCombs could tell that there was no liquid in it. McCombs had previously encountered fake drink cans, and he knew that he could open the can by twisting the top. Inside the can, McCombs found plastic

---

[1] The trial court granted Jones's motion in limine to exclude any evidence of the arrest warrant. Therefore, the warrant was not mentioned in the presence of the jury.

baggies containing cocaine and methamphetamine.[2] McCombs then arrested Jones. When he patted down Jones, McCombs found a set of scales in a pocket of Jones's jacket. McCombs also arrested Ford. When he patted down Ford, McCombs found a pistol in the sleeve of Ford's jacket.[3] Subsequently, Jones was indicted as a nonviolent habitual offender, *see* Miss. Code Ann. § 99-19-81 (Rev. 2020), for two counts of transferring a controlled substance and for unlawful possession of a firearm as a felon.

¶5. At trial, Ford testified that Jones handed him the gun and the Squirt can after McCombs called to Jones. Ford stated that the gun and the Squirt can both belonged to Jones. Ford testified that no one had made any promises to him in relation to his testimony against Jones.

¶6. Jones testified and denied that either the gun or the drugs belonged to him. Jones testified that McCombs approached him in the Sonic parking lot and asked him to go to the Carthage Police Department for questioning. According to Jones, he agreed to go with McCombs, but Ford "started cutting up and hollering" at McCombs. Jones claimed that McCombs then searched Ford and found the Squirt can in Ford's pocket. Jones claimed that Ford then blurted out, "This [(i.e., the can)] ain't mine. This is his. He [(i.e., Jones)] just

---

[2] Subsequent testing showed that the baggies contained 0.81 grams of cocaine and 0.86 grams of methamphetamine.

[3] At trial, Jones moved to suppress the can and the pistol, arguing that they were the product of an illegal stop and search. However, the trial court ruled that if a "stop" had occurred, it was lawful based on the active warrant for Jones's arrest. *See Utah v. Strieff*, 136 S. Ct. 2056, 2062-63 (2016) (holding that a preexisting arrest warrant authorizes an arrest and search incident to arrest). In addition, the trial court ruled that Jones lacked standing to object to any search of Ford. Jones does not challenge the trial court's rulings on appeal.

gave this to me." Jones testified that McCombs then placed Ford under arrest, at which point Ford stated that he had a gun in his jacket. Jones admitted that the Squirt can belonged to him. However, he testified that he had given the can to Ford sometime before they encountered McCombs. Jones also testified that the drugs inside the can were not his and that he had "no idea" how the drugs ended up inside his can.

¶7. The jury found Jones guilty of transferring cocaine and transferring methamphetamine but not guilty of possessing the pistol.[4] The court sentenced Jones to two concurrent terms of eight years in the custody of the Department of Corrections as a habitual offender.

¶8. On appeal, Jones argues that the State failed to prove that he was aware of the contents of the can or that he transferred the can. Relying on the doctrine of "retroactive misjoinder," Jones also argues that his acquittal on the firearm charge entitles him to a new trial on the drug charges.

## ANALYSIS

### I. Sufficiency of the Evidence

¶9. "When reviewing a challenge to the sufficiency of the evidence, this Court considers all of the evidence in the light most consistent with the verdict, giving the State the benefit of all inferences favorable to the verdict." *Meek v. State*, 806 So. 2d 236, 239 (¶9) (Miss. 2001). "When the evidence before the jury is such that reasonable jurors could have found the defendant guilty, the verdict is beyond our authority to disturb." *Id.*

---

[4] The trial court instructed the jury that the parties had stipulated and agreed that Jones had previously been convicted of a felony, but the nature of the prior felony was not disclosed to the jury.

4

¶10.	Citing *Berry v. State*, 652 So. 2d 745 (Miss. 1995), Jones argues that the State failed to prove that he "transferred" the Squirt can or any drugs to Ford. Specifically, Jones argues that "if he did pass a can to Ford, he did not intend to transfer any possessory interest in the can."

¶11.	In *Berry*, the defendant (Berry) was convicted of simple possession of cocaine, but the Supreme Court reversed the conviction, holding that Berry's "momentary handling" of the drugs was "insufficient as a matter of law to establish dominion and control." *Id.* at 746. The case began when a law enforcement officer approached a car parked on the side of the road. *Id.* When the officer approached the car, Anderson was in the driver's seat, Berry was in the front passenger's seat, and Sharkey was in the backseat. *Id.* The officer saw "white stuff that seemed to be crack cocaine" on the car's floorboard, and he arrested all three of the car's occupants. *Id.* The officer then searched the glove compartment and found a rock of crack cocaine wrapped inside a napkin. *Id.* At trial, Sharkey testified that Anderson had passed Berry the napkin and asked Berry to put it in the glove compartment and that Berry complied. *Id.* at 746-47. The Supreme Court held that Berry's "momentary handling" of the napkin "was insufficient to support an inference of dominion and control" of the cocaine wrapped inside the napkin. *Id.* at 751.

¶12.	In contrast to *Berry*, the issue in this case is not whether there was sufficient evidence that Jones ever possessed the cocaine and methamphetamine hidden in the Squirt can. The conflicting testimonies of Ford and Jones clearly created a jury question on that issue. Rather, Jones's argument on appeal is that *Ford's* "momentary handling" of the Squirt can

5

was insufficient to show that *Ford* possessed the drugs—and, hence, insufficient to show that Jones ever transferred the drugs to Ford. However, we agree with the State that the issue in *Berry* is materially distinguishable from the issue in this case and that there was sufficient evidence that Jones transferred the drugs.

¶13. It is a crime "for any person knowingly or intentionally . . . [t]o sell, barter, *transfer*, manufacture, distribute, [or] dispense . . . a controlled substance." Miss. Code Ann. § 41-29-139(a)(1) (Rev. 2018) (emphasis added). Under this statute, a "transfer" does not require proof that money or any other consideration was exchanged. *Meek*, 806 So. 2d at 239-40 (¶13). A "transfer" is simply "a change of possession from one person to another." *Id.* at 240 (¶14).

¶14. In *Meek*, the Supreme Court rejected a similar challenge to the sufficiency of the evidence of a transfer. *Id.* at 239-40 (¶¶10-16). In that case, the defendant (Meek) was in a serious car wreck and was unable to get out of his car. *Id.* at 238 (¶3). A good Samaritan (Hemby) arrived and offered help. *Id.* at (¶4). Meek handed Hemby a shaving kit and asked him to "get rid of this." *Id.* Hemby "could smell marijuana" and "was suspicious of the contents of the shaving kit," so he "immediately handed the kit back to Meek" and went to help the driver of the other vehicle. *Id.* Hemby later saw the same shaving kit lying on the ground twelve to fifteen feet away from Meek's car. *Id.* at (¶5). Hemby kicked the kit to a roadside ditch to preserve as evidence for law enforcement officers, who later determined that the kit did contain marijuana. *Id.*

¶15. Rejecting Meek's challenge to the sufficiency of the evidence, the Supreme Court held

6

that it was "clear" that Meek transferred the kit to Hemby, even though Hemby "immediately" returned it to Meek. *Id.* at 240 (¶14). The Court reasoned,

> The shaving kit clearly passed from Meek's hands to another's, while Meek had the requisite intent to get this item out of his possession. There is no logical conclusion other than that Meek knew what was in the shaving kit, and he intended to conceal it by getting it out of his hands into the hands of another. . . .
>
> The intent of the recipient is immaterial. All that is required is that Meek, the transferor, have knowledge of the character and presence of the controlled substance and that he intentionally transfer it to another with the intent to part with possession and control. That is exactly what occurred here.

*Id.* at (¶¶14-15). Thus, the fact that Hemby only handled the kit only momentarily before handing it back to Meek was not even "a factor in determining whether there was a transfer in fact." *Id.* at (¶16).

¶16.  Likewise in this case, there was sufficient evidence that Jones intended to get the Squirt can and the drugs out of his possession and into Ford's hands. *Id.* at (¶14). It was not necessary for the State to prove that *Ford* planned on keeping the drugs for any particular length of time. *Id.* at (¶15). The State only needed to show that Jones "intended to conceal [the Squirt can] by getting it out of his hands into the hands of another." *Id.* at (¶14). Accordingly, as in *Meek*, there was sufficient evidence for the jury to find that Jones transferred the drugs.

¶17.  Jones also asserts that "there's no evidence that [he] was aware of the contents of the can." Jones does not elaborate on this argument. However, as in *Meek*, the jury could logically infer that Jones was aware of the contents of the Squirt can from the fact that he tried to conceal it by handing it off to Ford. *Id.* Therefore, this argument is also without

7

merit, and there was sufficient evidence for a rational juror to find Jones guilty of transferring cocaine and methamphetamine.

## II.     Retroactive Misjoinder

¶18.     This Court has adopted the doctrine of "retroactive misjoinder." *Reynolds v. State*, 227 So. 3d 428, 433 (¶22) (Miss. Ct. App. 2017) (citing *Williams v. State*, 37 So. 3d 717, 720-21 (¶9) (Miss. Ct. App. 2010)).  "[R]etroactive misjoinder 'occurs when a trial or appellate court determines that while joinder of two or more counts against a defendant was initially proper, one or more of those counts should be vacated.'"  *Id.* at 433-34 (¶23) (quoting *Williams*, 37 So. 3d at 721 (¶9)).  The "defendant in such a case is entitled to a new trial on the remaining count(s) if he 'can show that he suffered clear and compelling prejudice as a result of the evidence introduced to support the vacated count.'"  *Id.* at 434 (¶23) (quoting *Williams*, 37 So. 3d at 721 (¶9)).

¶19.     However, the doctrine of retroactive misjoinder does not apply just because the jury returned a split verdict.  *Id.* at 434 (¶25).  That is, the defendant is not "entitled . . . to a new trial on the counts of conviction simply because *the jury* found the government's proof on other counts unpersuasive."  *Id.* (quoting *United States v. Hamilton*, 334 F. 3d 170, 183 (2d Cir. 2003)).  Rather, "[t]he doctrine of retroactive misjoinder applies when the defendant was prejudiced by evidence admissible only on a charge that failed or was invalid *as a matter of law*."  *Id.*  "In the more typical case of conviction on some counts and acquittal on others, 'the time to decide whether it is fair to subject a defendant to a single trial for a variety of crimes is before trial, when the defendant can complain of misjoinder or move for a

8

severance.'" *Id.* (ellipses omitted) (quoting *United States v. Holzer*, 840 F.2d 1343, 1349 (7th Cir. 1988)). "In essence, by invoking the retroactive misjoinder doctrine," the defendant in such a case "is attempting to avoid the general rule" that the failure to request a severance of charges prior to trial waives the issue on appeal. *Id.* at 434 n.3.[5]

¶20.    The doctrine of retroactive misjoinder does not apply in this case. Jones was validly indicted and tried for unlawfully possessing a firearm as a felon. There was no defect in his indictment on that charge. In addition, the State presented sufficient evidence at trial for the charge to go to the jury, and the trial court properly denied Jones's motion for a directed verdict on that charge. The jury concluded that there was reasonable doubt as to whether Jones possessed the gun. However, the split verdict is not a basis for a new trial on the two counts of conviction. *Reynolds*, 227 So. 3d at 434 (¶25). Accordingly, this issue is also without merit.

**CONCLUSION**

¶21.    The State presented sufficient evidence that Jones knowingly transferred cocaine and methamphetamine, and the doctrine of retroactive misjoinder does not apply in this case.

¶22.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

---

[5] *See also* MRCrP 14.3(b) ("A defendant's motion to sever offenses and/or defendants must be made at the earliest opportunity. The right to move for severance may be deemed to have been waived if a proper motion is not timely made."). Jones did not move to sever his charges but instead proceeded to trial on all three counts.