770 So.2d 986 (2000)
John T. FRAZIER, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01590-COA.
Court of Appeals of Mississippi.
August 1, 2000.
Rehearing Denied October 31, 2000.
*987 Joseph C. Langston, Christi R. McCoy., Booneville, Attorneys for Appellant.
Office of the Attorney General by W. Glenn Watts, Attorney for Appellee.
BEFORE McMILLIN, C.J., BRIDGES, AND PAYNE, JJ.
BRIDGES, J., for the Court:
¶ 1. John T. Frazier was convicted in the Circuit Court of Union County for possession of methamphetamine with intent to distribute. He was sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections. Aggrieved, Frazier has perfected an appeal to this Court on the following issue

I. APPELLANT'S CONVICTION WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
After reviewing the record, we find that the evidence presented was insufficient to show constructive possession. Accordingly, we reverse and render.

FACTS
¶ 2. In February 1997, Frazier and his girlfriend, Angie Sutton, were stopped for questioning in a parking lot in Union County, Mississippi. Frazier was driving a tractor trailer truck owned by Thorton Farms. Several officers asked to search the truck, and Frazier first asked if the officers had a warrant and if he could call his boss to get the boss's permission for the search. Frazier later consented after telling the officers that he was only the driver of the truck not the owner. While conducting the search, the officers opened an unlocked tool box that was attached to the outside of the truck on the passenger side below a high step up door. Looking inside this box, the officers found various items such as a milk crate, an oil can, and tools. Upon examining the STP oil can, officer Mike Foreman noticed a fake bottom. He opened the bottom and found a plastic bag with white powder along with eighteen smaller bags. The powder was determined to be a mixture of amphetamine and methamphetamine weighing 40.01 grams (1.41 ounces). While the police were conducting the search, Frazier was sitting in a patrol car with Officer Chuck Smith. The State presented testimony that at the exact time the STP oil can was found, Frazier began clutching his chest and acting as if he could not breathe. The State presented further evidence that after the drugs were found, Frazier returned to his normal condition and needed no medical assistance. Subsequently, Frazier was arrested.
¶ 3. A consensual search of Angie Sutton's house on the same night produced several baggies with at least one apparently containing methamphetamine residue. In her testimony at trial Sutton stated that she had removed the baggies from Frazier's home when she had been cleaning it while he was out of town.

PROCEEDINGS BELOW
¶ 4. Frazier was indicted for possession of methamphetamine with intent to distribute. He was convicted in the Union County Circuit Court and sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections. Aggrieved with that conviction and sentence, Frazier has perfected an appeal to this Court.

ARGUMENT AND DISCUSSION OF LAW
¶ 5. Frazier argues that his conviction for possession of methamphetamine with intent to distribute is against the overwhelming weight of the evidence. Frazier contends that the State presented no evidence that would connect him to the methamphetamine found in the unlocked *988 toolbox. The State maintains that the record contains credible, substantial testimony and evidence in support of the jury's verdict. The State also contends that Frazier faked a heart attack at the exact time the officers were examining the STP oil can. The State argues that this action amounts to a behavioral admission by Frazier. We disagree.
¶ 6. Our standard for reviewing challenges to convictions based on the weight of the evidence is well-established. As to each element of the offense, we consider all of the evidence in the light most favorable to the verdict. We reverse when, with respect to an element of the offense charged, the evidence is such that reasonable and fair-minded jurors could only find the accused not guilty. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 7. In order to support a conviction for possession of a controlled substance, the State is not required to prove actual physical possession. Berry v. State, 652 So.2d 745, 748 (Miss.1995). Rather, the State may establish constructive possession by evidence showing that the contraband was under the dominion and control of the defendant. Id. "A presumption of constructive possession arises against an owner of premises upon which contraband is found." Cunningham v. State, 583 So.2d 960, 962 (Miss.1991). However, "when contraband is found on premises which are not owned by a defendant ... the State must show additional incriminating circumstances to justify a finding of constructive possession." Id.
¶ 8. This Court and the Mississippi Supreme Court have consistently held that proximity is an essential element to establish constructive possession, but by itself is not adequate in the absence of other incriminating circumstances. Cunningham, 583 So.2d 960, 962 (Miss.1991). Additionally, where the defendant is on the premises of another, or as in the case at bar, operating the vehicle of another, the State must prove as essential elements that the defendant had dominion and control over the contraband (Fultz v. State, 573 So.2d 689, 689 (Miss.1990)) and knowledge of the presence and character of the cocaine. Campbell v. State, 566 So.2d 475 (Miss. 1990).
Although the Court in Curry stated that possession is not a question susceptible of a specific rule, guidelines were set out to follow in analyzing each case. First, the State must prove that the defendant exercised dominion over the contraband. Curry, 249 So.2d at 416. Second, the State must prove that the defendant was aware of the presence and character of the substance. Id.

Id.
¶ 9. In the case sub judice, the State failed to show additional incriminating circumstances to justify a finding of constructive possession. The State established the following facts which it would construe as sufficient to prove Frazier's guilt:
1. The one baggy containing methamphetamine was found in a truck that had been in Frazier's possession for twenty-five and one-half hours after having been in the possession of Jim Adams for fifteen days prior to Frazier's driving the truck. Additionally, the truck and the unlocked toolbox had been parked unattended for one hour prior to the police search of the vehicle.
2. Baggies with methamphetamine residue were found, not at Frazier's residence, but at Sutton's home which she claimed she removed from Frazier's home.
3. Frazier refused consent to the police search stating that he wanted to call his boss to obtain the boss's permission before allowing a search of his truck.
4. Frazier exhibited some behavior which the police inferred to be physical distress of some sort at the time the toolbox was being searched. The State claims that Frazier's actions in faking a heart attack amounted to incriminating circumstances.
¶ 10. The State incorrectly asserts that Frazier's possession of the truck for twenty-five *989 hours qualifies as an incriminating circumstance. Ferrell v. State, 649 So.2d 831, 834 (Miss.1995). The circumstances cited in this case are insufficient to show that Frazier exercised dominion and control over the STP can. The STP can was in an unlocked toolbox on the outside of the truck accessible to anyone. Although Frazier had been driving the truck that day, the evidence established that other drivers had access to the truck. Furthermore, Frazier's fingerprints were not found on the STP can or the plastic bags containing the contraband.
¶ 11. The State would further offer, as additional incriminating evidence, baggies with methamphetamine residue not found in Frazier's possession or control, nor at his place of residence, but allegedly taken by Angie Sutton from Frazier's residence at a time when he was out of town.
¶ 12. Additionally, in order to affirm this conviction we must infer that Frazier's physical distress, as reported by the arresting officers, amounts to an admission of guilt. In Cunningham v. State, 583 So.2d 960 (Miss.1991) the Mississippi Supreme Court reversed a constructive possession conviction based, in part, on the officers' assuming Cunningham knew there was contraband in the car in which he was riding because he "repeatedly looked through the truck's rear window at the officers after they turned on their blue lights." Id. at 962. The court found this insufficient corroboration as they "doubt[ed] anyone who has found an emergency vehicle with flashing lights behind him has not turned and looked at such vehicle." Id. The Court finds the State's or the jury's assumption that Frazier was faking a heart attack rather than experiencing extreme stress in the situation in which he was placed too tenuous to sustain this conviction. This argument fails to show that the contraband was under the dominion and control of the defendant. Fultz, 573 So.2d at 689.
¶ 13. Finally, the State asks us to consider Frazier's refusal to allow a police search of the vehicle until he placed a call to his boss as incriminating evidence. Making this leap in reasoning comes very close to penalizing a citizen for exercising his constitutional right against unreasonable search under the Fourth Amendment of the U.S. Constitution and Article 3 section 23 of the Mississippi Constitution. By affirming a decision by a jury which may have taken this leap to arrive at a verdict of guilt, we are inconsistent with well established principles of law which state that the exercise of a constitutional right may not be used as evidence against a defendant. Griffin v. State, 557 So.2d 542, 553 (Miss.1990) (finding reference to defendant's exercising his Fifth Amendment right not to testify as deprivation of fair trial). See also Jimpson v. State, 532 So.2d 985, 991 (Miss.1988); Livingston v. State, 525 So.2d 1300, 1305-08 (Miss.1988); Monroe v. State, 515 So.2d 860, 865 (Miss. 1987); Bridgeforth v. State, 498 So.2d 796, 798 (Miss.1986); Wilson v. State, 433 So.2d 1142, 1146 (Miss.1983); Davis v. State, 406 So.2d 795, 801 (Miss.1981).
¶ 14. It is the Courts's opinion that the State failed in its efforts to prove, even by circumstantial evidence, the elements of possession. Therefore, it is further this Court's opinion that reasonable men could not have found Frazier guilty beyond a reasonable doubt. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 15. Beyond proving possession, constructive or otherwise, Frazier was charged with intent to distribute the controlled substance. This charge brings with it an entirely different set of problems for the prosecution to contend with, specifically the lack of circumstantial evidence probative of intent to distribute. When the amount of the controlled substance recovered is consistent with personal use, other evidence of possible involvement in the drug trade may be used to establish intent. Jowers v. State, 593 So.2d 46, 47 (Miss. 1992). Despite strong dissent, the Jowers court found that three separate bags containing *990 just under eleven ounces of marijuana (approximately 300 grams), two sets of portable scales, $356 in cash and other items were insufficient to support a conviction for intent to distribute marijuana. The State offered no such evidence here other than the smaller bags found with the controlled substance. Since we reverse on the State's failure to prove constructive possession, this becomes a moot point.
¶ 16. After reviewing the evidence, this Court is unable to find sufficient incriminating evidence to establish possession. Accordingly, we reverse and render the judgment of the circuit court in favor of the appellant.
¶ 17. THE JUDGMENT OF THE UNION COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF METHAMPHETAMINE WITH INTENT TO DISTRIBUTE IS REVERSED AND RENDERED. COSTS OF APPEAL ARE ASSESSED TO UNION COUNTY.
McMILLIN, C.J., AND KING P.J., LEE, AND THOMAS, JJ., CONCUR. IRVING DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J., MOORE AND PAYNE, JJ. MYERS, J., NOT PARTICIPATING.
IRVING, J., DISSENTING:
¶ 18. I agree with the majority that the evidence is insufficient to support Frazier's conviction of possession with intent to distribute,[1] but because I find the evidence sufficient to support simple possession, I would reverse and render his conviction of possession with intent to distribute but remand for sentencing on simple possession.
¶ 19. In order to support my view, a fuller explication of the facts than offered by the majority is necessary. I offer those facts in the paragraphs that follow.
¶ 20. On February 19, 1997, at 7:00 p.m., Frazier left New Albany in an eighteen wheeler, drove to Dawsonville, Georgia, turned around and drove back to New Albany, arriving in New Albany around 8:30 p.m. on February 20th. When he returned to New Albany, he did not take the truck home; instead he parked it in a parking lot behind a convenience store next to the Huddle House restaurant. He was picked up by his girlfriend, Angie Sutton.
¶ 21. Around 9:30 p.m., officers Mike Foreman and James Wildman had just finished a detail and were staking out the tractor trailer parked near the Huddle House. They "were involved in an operation... on some drug trafficking particularly at the Huddle House parking lot in New Albany" when a car pulled up and dropped a gentleman off later identified as Frazier. Officer Foreman approached Frazier, and Wildman pursued the car which had dropped Frazier off. The car was stopped, and the occupant was identified as Angie Sutton, Frazier's girlfriend.
¶ 22. Foreman informed Frazier that Foreman had reason to believe that Frazier was carrying contraband in Frazier's vehicle and asked Frazier for permission to search the truck. Frazier asked if Foreman had a search warrant. Officer Chuck Smith was called to the scene and also asked permission to search the truck. Frazier said it was not his truck, it was his boss's truck and that he needed to call his boss. He was then told that he was in possession of the truck and that he could grant permission for the search. After some discussion about a search warrant, Frazier finally gave permission for the search. The search produced bags of methamphetamine hidden away in an STP *991 can in an unlocked toolbox of the eighteen wheeler. Other facts will be developed as warranted.
¶ 23. Although Frazier's assigned issue challenges the weight of the evidence, he really argues sufficiency of the evidence as to the element of possession. A challenge to the weight of the evidence challenges the propriety of the trial judge's denial of a motion for a new trial. Our standard on review is whether the trial judge abused his discretion in denying the motion. A motion for a directed verdict and for a JNOV challenges the sufficiency of the evidence, and, in such cases, we are authorized to reverse only when with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fairminded jurors could only find the accused not guilty. Harveston v. State, 493 So.2d 365, 370 (Miss.1986).
¶ 24. Since the contraband was not found on Frazier's person or in a vehicle owned by him, I agree with the majority that the State had to show that Frazier constructively possessed the contraband, that is, that he exercised dominion and control over the contraband. There is no presumption of constructive possession of contraband by a defendant in cases where the contraband is found on property other than the defendant's. Though Frazier exercised dominion and control over the tractor, that fact alone does not carry the day. He had to possess scienter of the contraband in order to warrant a finding that he had dominion and control over it. This must be shown by additional incriminating circumstances to justify a finding of constructive possession. See Curry v. State, 249 So.2d 414, 416 (Miss.1971). I believe the State presented sufficient evidence of additional incriminating circumstances to make its case that Frazier exercised dominion and control of the contraband and, therefore, constructively possessed it. I now discuss that evidence.
¶ 25. The evidence is uncontradicted that Frazier had been in the exclusive dominion and control of the tractor and trailer for twenty-five and a half hours. As stated, he took possession of the truck at 7:00 p.m. on February 19th and did not relinquish control of it until around 8:30 p.m. the next day. The evidence was that the officers had the truck under surveillance around 9:00 or 9:30 p.m. while Frazier had been picked up around 8:00 or 8:30 p.m. following his parking the truck on the lot.
¶ 26. Officer Smith, who had been called to the scene, asked Frazier if Frazier had any objection to talking to Smith while the search was progressing. Frazier agreed to talk, and he and Smith sat in a patrol car just off to the side of the truck. While the vehicle was being searched, Frazier and Smith were sitting in the patrol car in a position to view the search area. When Frazier first sat in the patrol car, he was calm, and he and Smith engaged in conversation. There was nothing unusual about Frazier's demeanor at that time. When Foreman began examining the compartment where the contraband was eventually found, Frazier "looked real funny." When Foreman opened the compartment, Frazier grabbed "[Frazier's] chest and kind of slumped over", and when Foreman removed the STP can, Frazier opened the door to the patrol car "and kind of just did a little rolled [sic] right outside to the door."
¶ 27. Smith further described Frazier's actions:
I cannot remember if he went all the way to the ground or just slumped there with his knees down to the ground. He didn't lay flat. He was holding his chest. I exited the car and ran around and checked him to see if he was okay, if he needed me to call an ambulance.
¶ 28. Smith, who had been a medic for three years and an intermediate paramedic for eight years with Tupelo hospital, checked Frazier's pulse which was fine. Frazier's breathing was okay, and he did not appear to be in any distress. He was not "discolored or anything." Foreman *992 told Frazier that paramedics were just across the street and that he would call them to get him checked, but Frazier declined the offer, saying he was okay. After the contents were removed from the STP can, Frazier regained his composure.
¶ 29. Angela Sutton testified for the defense. She testified that she was Frazier's girlfriend and that Frazier was helping her financially. Frazier called her around 8:00 p.m. on the evening of the search. She picked him up in the Huddle House truck parking lot. They were gone about one or two hours. She did not say where they went in the interim although she did testify that she and her daughter left from Frazier's house to drop him back off.
¶ 30. A consensual search of Sutton's house on the same night the truck was searched turned up several baggies with at least one apparently containing methamphetamine residue. On cross-examination, the following exchange took place concerning the baggies:
Q. Now, did you tell those officers that night that those baggies weren't yours. They were John Frazier's?
A. No, I did not.
Q. You deny saying that?
A. I sure do.
Q. And you remember the conversation that I'm talking about, you remember it?
A. That night or the next day.
Q. Well either that night or the next day, did you tell them the next day that they were John Frazier's?
A. Yes, I did. She further testified:
Q. How many baggies were there that you said belonged to Mr. Frazer [sic]?
A. I don't know.
Q. Was it too many to count?
A. I just don't know. They had it.
Q. You just don't remember how many.
Q. More than one?
A. I don't know.
Q. It was several wasn't it?
A. I don't think so and I believe, it was assumed that they belonged to John.
Q. You assumed they belong to John?
A. Yes, because I use to go down and clean John's house when he was gone out of town and one day when my daughter went down there to clean it up when I opened the door it was laying on the thing and I stuck it and grabbed it up and stuck it in my pocket to keep my daughter from seeing it.
Q. You told the officers you had removed those baggies from John Frazer's [sic] house because they were out in plain view and you didn't want your daughter to see them?
A. Uh-huh.
Q. Well why [sic] you stayed some with John Frazer [sic] you did not live with him did you?
A. Excuse me.
Q. You did not live with him?
A. No, I did not.
Q. But helped clean up his house. Nobody else lived there did they besides him?
A. No. John and I were not together as a couple. We were just friends and we went out occasionally. I lived in town and he was gone on the road most of the time.
¶ 31. Frazier did not testify, as was his right, but he offered the testimony of his boss, Lynus Thorton, who testified that the truck had been driven exclusively by a Jim Adams between February 4, 1997 and February 19, 1997. However, he further testified that the truck had been in the sole and exclusive possession of Frazier for twenty-five and a half hours.
¶ 32. This is a circumstantial evidence case. The evidence of Frazier's guilt is not overwhelming, but neither is it insufficient. *993 The conduct displayed by Frazier when the officers were closing in on the location where the contraband was hidden and when the contraband was removed from the STP can is highly incriminating and indicative of knowledge of the existence of the contraband. Frazier's conduct is without logical explanation except the one apparently accorded it by the jury, that is, Frazier was expressing discomfort at realizing that he was on the verge of being caught with the drugs. Clearly, Frazier's conduct was not normal. Smith, an experienced paramedic, checked Frazier's pulse which was normal. His breathing was also normal. It is illogical to conclude that Frazier was experiencing some unidentified medical problem of such severity that caused him to react as he did, and yet he would not seek medical treatment. I admit that is possible though illogical. However, it is also reasonable for fairminded persons to conclude that Frazier was reacting not to a medical condition but to the realization that his luck had run out. It appears the jury concluded the latter.
¶ 33. It is well settled law that the jury is the sole arbiter of the weight and credibility of the evidence. Byrd v. State, 522 So.2d 756, 760 (Miss.1988). The jury having weighed the evidence of Frazier's conduct when the contraband was discovered, we are not at liberty to re-weigh that evidence or assign a different inference to it unless we can say that the evidence, taken in the most favorable light, could not have supported a reasonable juror's conclusion that Frazier was guilty beyond a reasonable doubt. See Rainer v. State, 473 So.2d 172, 173 (Miss.1985).
¶ 34. Also significant is the fact that Frazier wanted to call his boss before allowing the truck to be searched. He enjoyed a constitutional right not to allow the search of the truck. Had he exercised that right, no inference could be drawn from his decision to do so. However, he attempted to prevent the search not on constitutional grounds, but on the assertion that to do so would violate his boss's order. When Frazier was told that he had possession of the truck and did not need his boss's permission to give consent, Frazier then stated that if he did not allow the search he knew the officers would just get a search warrant and search it any way.
¶ 35. Since it is clear that Frazier believed the truck could be searched with or without his boss's permission, it is difficult to understand why he asserted the need to call his boss, but one logical explanation is that he was grasping for some means of preventing the officers from searching the truck because he knew he was carrying the contraband in it. Clearly, there would be no reason why his boss should object to the truck being searched for drugs unless the boss was involved. There is no evidence that the boss was in fact involved, and the boss testified emphatically that the drugs did not belong to him although he did say that he had directed his employees to obtain his permission before allowing a search of his trucks.
¶ 36. While the boss also enjoys a constitutional right from unwarranted searches and seizures of his property, he did not say or intimate that his directive to his employees was grounded on constitutional principles. Moreover, his directive could not prevent his trucks from being searched if the drivers were presented a search warrant. He offered no explanation for this blanket directive. The fact that he has a constitutional right to not have his trucks searched without a warrant would not preclude the jury from drawing an inference that, with this testimony, he was simply trying to help his employee, Frazier. Since the boss was not the defendant, the jury could consider his motive and weigh the credibility of his testimony regarding the directive without running afoul of any constitutional prohibition. It is entirely reasonable that the jury may have concluded that this testimony was offered by the defense in an effort to thwart the impact of Frazier's asserting the need to call his boss when he was asked permission *994 to search the truck. Apparently, the jury was not impressed by this effort.
¶ 37. I also find Sutton's testimony to be relevant and probative on the ultimate question of Frazier's guilt. Her testimony, while not directly connecting Frazier to the contraband found in the truck, showed at least a nexus between methamphetamine and Frazier. A baggie with methamphetamine residue was found at Sutton's house on the night in question. She testified that the baggie came from Frazier's house. No one lived with Frazier. Since she had picked Frazier up that night, the jury might well have concluded that the baggie containing the methamphetamine residue found at Sutton's house had been brought there that evening by Frazier, despite Sutton's testimony that the baggie had been brought there at an earlier time by her. After all, Sutton did have a motive to shade the truth.
¶ 38. I reiterate that Sutton's testimony alone is insufficient to support a finding that Frazier constructively possessed the contraband found in the truck, but Frazier's bizarre and unexplained actions when the officers were closing in on his cache and his reluctance to allow the truck to be searched without calling his boss, along with Sutton's testimony enabled the State to reach its required threshold. On this evidence, reasonable and fairminded jurors could find additional incriminating circumstances and conclude from a totality of the evidence that Frazier knowingly possessed and exercised dominion and control over the methamphetamine found in the truck which had been in his continuous possession for twenty-five and a half hours.
¶ 39. In this case, neither the State nor Frazier requested a lesser-included-offense instruction on simple possession, and none was given by the trial court. In its appellate brief the State does not concede the insufficiency of the evidence on possession with intent to deliver. However, we are not precluded from affirming Frazier's conviction for simple possession even though the jury was not allowed to pass upon the sufficiency of the evidence as to this lesser offense. See Shields v. State, 722 So.2d 584 (¶¶ 4, 5, 17-19) (Miss.1998). Therefore, I would reverse and render Frazier's conviction for possession with intent to deliver but would remand for resentencing for simple possession.
SOUTHWICK, P.J., MOORE AND PAYNE, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] I believe the small amount of the contraband found is consistent with personal use, and it is well-settled law that when the amount of contraband is consistent with what could be expected for personal consumption, that is insufficient to sustain a conviction for possession with intent to distribute. See Smith v. State, 656 So.2d 95, 99-100 (Miss. 1995).