MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. Willie Lewis Hodges, Jr., was convicted in the Circuit Court of Webster County of statutory rape of a child under fourteen years of age and sentenced to life in the custody of the Mississippi Department of Corrections. Hodges appeals his conviction and sentence, arguing that the State improperly introduced evidence of prior bad acts and that the verdict was against the overwhelming weight of the evidence. Finding no error, we affirm Hodges’s conviction and sentence.
 

 FACTS
 

 ¶ 2. In August 2007, A.B., an eleven-year-old female child,
 
 [1]
 
 was examined by Dr. Tim Whittle, a specialist in obstetrics and gynecology. A.B. complained of vag
 
 *788
 
 inal discharge and pain in her lower abdomen. A CAT scan and subsequent surgery revealed an abscess in her left fallopian tube. The mass and the fallopian tube were removed, and A.B. was treated with antibiotics; however, in January 2008, she suffered another infection, this time in her right fallopian tube. Treatment necessitated a complete hysterectomy. A second abscess was tested,
 
 [2]
 
 and it was ultimately determined that both infections had resulted from extensive, preexisting damage to A.B.’s reproductive system that had been caused by an untreated infection of chlamydia, a sexually transmitted disease.
 

 ¶ 3. Donna Patterson, a surgical nurse at North Mississippi Medical Center at West Point, testified that she had participated in A.B.’s treatment with Dr. Whittle. Immediately prior to A.B.’s second surgery, Patterson was instructed to take A.B. into the hallway because of severe weather. Patterson spoke with A.B., and she discovered that A.B. and her son were classmates. The two spoke for some time, and A.B. ultimately disclosed to Patterson that she had been raped, although A.B. did not identify the perpetrator at that time. Approximately one week later, Patterson joined A.B., A.B.’s stepmother, and A.B.’s grandmother at the grandmother’s home. There, A.B. identified “Little Willie” Hodges, her stepfather, as the person who raped her. Patterson testified:
 

 She said to me that, “Ms. Donna, can I tell you something?” And I said, “You can tell me anything.” And she said, “I want to tell you what happened to me” because I had told her in the hospital previously on my visit to her grandmother, the best thing to do when something like this happens is to talk about it; find someone you trust and confide and talk to them. And she said, “I want to tell you something. I think that you are my friend. Can I tell you what happened to me?” And I told her she could, and she proceeded to tell me what exactly happened, what happened
 
 to her.
 

 [[Image here]]
 

 She told me that one night that her mom had taken some medication, Se-roquel and Valium, and drank some type of liquor, and that her mom had passed out; and that this gentleman by the name of [ — ] I don’t know if — Little Willie came into her room. And she was in the bed asleep, and that he woke her up[,] and that he put his hand over her mouth and told her that if she moved, that he was going to hurt her; and that he moved her pajamas bottom, her panties and pajamas bottom to the side and penetrated her and raped her and told her that if she told anyone, that he would harm her and her family.
 

 A.B.’s stepmother and grandmother testified to the same events.
 

 ¶ 4. At trial, A.B. elaborated that the rape had occurred while she was living in Webster County with her mother and Hodges, between January and April 2006, when A.B. was ten years old. A.B. testified that she had not revealed the rape sooner because Hodges had threatened to kill her and her family if she told anyone.
 

 ¶ 5. Hodges testified in his own defense. He denied raping A.B. and averred that while she was living with him, he worked fifty-hour weeks and had never been alone with the child. Hodges denied that A.B.’s mother drank alcohol when the children were present, and he further testified that
 
 *789
 
 A.B. had shared a bedroom with his mother and that the door to that room could not be locked. Hodges testified that he believed A.B. had accused him because she did not wish to identify the actual perpetrator or because she wished to remain in the custody of her father, who she had lived with since April 2006. He stated that his relationship with A.B. had been good until she returned from a week-long stay with her father, after which she became difficult to control.
 

 ¶ 6. On cross-examination, Hodges denied that he had ever been infected with a sexually transmitted disease, but he admitted that he had taken ciprofloxacin (commonly referred to as “Cipro”), an antibiotic that can be used to treat chlamydia, on two occasions in 2006. Hodges testified that he had taken Cipro in March 2006, because his wife, A.B.’s mother, had been diagnosed with trichinosis and again in October 2006 to treat irritable bowel syndrome. A.B.’s mother and Deborah Herrod, Hodges’s mother, also testified for the defense and supported Hodges’s testimony.
 

 ¶ 7. Hodges was ultimately convicted of the statutory rape of A.B., a child under the age of fourteen years, and the trial court sentenced him to life imprisonment.
 

 DISCUSSION
 

 1. Prior Bad Acts
 

 ¶ 8. Hodges argues that the trial court erred in admitting testimony concerning physical abuse and neglect that A.B. and her siblings allegedly suffered while living at his home in 2006. The State also referenced photographs documenting the abuse in its examination of several witnesses.
 
 [3]
 
 Hodges asserts that this violated Mississippi Rule of Evidence 404(b), which prohibits the introduction of evidence of prior bad acts “to prove the character of a person in order to show that he acted in conformity therewith.”
 

 ¶ 9. Testimony at trial indicated that Hodges and his wife neglected the children’s hygiene, fed the children poorly, and had beaten them with belts and switches. As a result, the children had ultimately been placed in their father’s custody in April 2006.
 

 ¶ 10. On our review of the record, we find that Hodges failed to make any contemporaneous objections to this testimony at trial. He is, therefore, procedurally barred from raising this issue on appeal.
 
 See Spicer v. State,
 
 921 So.2d 292, 305(¶ 22) (Miss.2006).
 

 ¶ 11. Notwithstanding the procedural bar, we find no error here — it is evident that Hodges “opened the door” to this evidence, because one of his theories of defense was that A.B. had accused Hodges of rape to remain in her father’s custody. The State rebutted this argument with testimony which indicated that A.B. had been placed in her father’s custody on independent grounds and that she was unlikely to be returned to the Hodges household.
 
 [4]
 
 This issue is without merit.
 

 2. Weight of the Evidence
 

 ¶ 12. Hodges argues that the verdict against him was against the overwhelming weight of the evidence because the State’s case was essentially founded on the uncorroborated testimony of A.B. and because
 
 *790
 
 the State failed to demonstrate that Hodges was ever infected with chlamydia.
 

 ¶ 13. The supreme court has elaborated upon appellate review of the weight of the evidence supporting a jury’s verdict, stating:
 

 When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.... However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, as the “thirteenth juror,” the court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
 

 Bush v. State,
 
 895 So.2d 836, 844(¶ 18) (Miss.2005) (internal citations and quotations omitted).
 

 ¶ 14. In reviewing the evidence we have discussed above in the light most favorable to the verdict, we do not find Hodges’s conviction to be against the overwhelming weight of the evidence. A.B. stated consistently and unequivocally that Hodges had raped her, and the fact of her rape — if perhaps not the identity of the perpetrator — was corroborated by compelling medical evidence. And while Hodges correctly argues that the State failed to prove he was infected with chlamydia, it did show that he had taken an antibiotic, Cipro, that is used to treat the disease. In fact, the State established through the testimony of Dr. Whittle that Hodges may have been infected with chlamydia at the time of the rape and never known it himself, if he did take Cipro in March 2006 for other reasons as he testified. Certainly, we do not find the verdict here “so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Id.
 
 This issue is without merit.
 

 ¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF WEBSTER COUNTY OF CONVICTION OF STATUTORY RAPE OF A CHILD UNDER FOURTEEN YEARS OF AGE AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WEBSTER COUNTY.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . To protect the confidentiality of minor victims of sexual abuse, we substitute fictitious initials for their names.
 

 [2]
 

 . The first abscess tested negative for chlamydia; however, Dr. Whittle testified that this was not unusual because the abscesses were the result of subsequent infections that had taken advantage of scarring and other damage caused by the chlamydia infection, not the chlamydia itself.
 

 [3]
 

 . The trial court did not allow the photographs to be admitted into evidence.
 

 [4]
 

 . Hodges and A.B.'s mother suggested that the custody dispute was ongoing and that litigation would resume when they were able to afford it; however, witnesses for the State testified that the custody dispute had been adjudicated in A.B.'s father’s favor.