# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00384-COA

**MARVIN REROCKUS DEMOND CARVER**                    **APPELLANT**
**A/K/A MARVIN REROCUKUS DEMOND**
**CARVER A/K/A MARVIN CARVER A/K/A**
**MARVIN REROCKUS CARVER A/K/A MARVIN**
**R. CARVER A/K/A "FOOT"**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/18/2013 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF POSSESSION OF MORE THAN THIRTY GRAMS BUT LESS THAN 250 GRAMS OF MARIJUANA, AND SENTENCED AS A HABITUAL OFFENDER AND SUBSEQUENT DRUG OFFENDER TO SERVE SIX YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION |
| DISPOSITION: | AFFIRMED - 11/01/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**JAMES, J., FOR THE COURT:**

¶1.     Marvin Rerockus Demond Carver appeals from his conviction of possession of more

than thirty grams but less than 250 grams of marijuana. Carver was sentenced as a subsequent drug offender under Mississippi Code Annotated section 41-29-147 (Rev. 2013) and as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015) to six years in the custody of the Mississippi Department of Corrections without the possibility for parole or early release. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On November 23, 2011, half-brothers Carver and Nicholas Ingram were traveling from Grenada, Mississippi, to the Mississippi Gulf Coast. Ingram was driving, and Carver was in the front passenger seat. Carver and Ingram were pulled over for speeding on Interstate 55 in Madison County by State Trooper Wade Zimmerman.

¶3. Trooper Zimmerman noticed a strong odor of marijuana coming from the vehicle when he approached the driver's side of the vehicle. Trooper Zimmerman observed that Ingram's eyes were "very bloodshot." Trooper Zimmerman asked Ingram to step out of the vehicle and questioned him while Carver remained in the vehicle. Trooper Zimmerman asked Ingram if he had been smoking marijuana. Ingram initially denied smoking marijuana, and Trooper Zimmerman gave him a field sobriety test. Ingram then admitted that he had been smoking marijuana, and he gave Trooper Zimmerman consent to search the vehicle.

¶4. Trooper Zimmerman discovered a handgun under the driver's seat and a small bag of marijuana in the center console. Trooper Zimmerman discovered two larger plastic bags containing a total of nearly four ounces of marijuana in the trunk. One bag was wrapped in a manila envelope, and the other bag was in a white plastic shopping bag. A digital scale was

2

also discovered in the trunk near the bags of marijuana. Ingram told Trooper Zimmerman that the marijuana found in the trunk was not his, and he also denied having any knowledge of it.

¶5.    Ingram and Carver were arrested and transported to the Madison County Jail. At the jail, police discovered $893 cash in Ingram's pocket. Agent Candace Edwards of the Mississippi Bureau of Narcotics interviewed Ingram and Carver. Ingram and Carver also provided written statements.

¶6.    Ingram told Agent Edwards that the marijuana found in the center console was left over from a blunt he had just smoked. While on the roadside, Ingram had initially denied any knowledge of the marijuana in the trunk but claimed full responsibility for it and the handgun during his interview and in his written statement. Ingram's statement provided that the marijuana was for his personal use. He also told Agent Edwards: "[W]e [were] going to smoke it for the weekend."

¶7.    Carver told Agent Edwards that he had previously served nine years in prison for a drug-possession charge. He told Agent Edwards that he and Ingram's grandmother had asked him to go with Ingram to the coast. Agent Edwards testified that "Carver stated that he knew about the marijuana in the vehicle and that he . . . and Nicholas Ingram were going to smoke it for Thanksgiving." Carver told Agent Edwards that he did not know anything about the gun being in the vehicle. Carver's written statement provided, in part:

> I knew nothing of [Ingram] possessing the firearm and by him knowing that
> I hate being around guns, he had kept it a secret – until we got pulled over! .
> . . The marijuana he had, I knew about because he said he had [some] "weed"
> for us to smoke for Thanksgiving. Me being the older "square," as he calls

me[,] agreed to "puff" for the special occasion.  I didn't know he had all that much marijuana until the police pulled it out [of] the trunk! . . . My brother is responsible for the marijuana and holding the firearm secretly!

(Emphasis in original).

¶8.    On August 21, 2012, Carver and Ingram were indicted for possession of more than thirty grams but less than one kilogram of marijuana with intent to distribute, while in possession of a firearm, and for conspiracy to possess more than thirty grams but less than one kilogram of marijuana with intent to distribute.  Carver was tried before a Madison County jury on June 12-13, 2013.

¶9.    Ingram, who had pled guilty prior to Carver's trial, testified on behalf of Carver. Ingram testified that his grandmother rented a vehicle for him to drive to the coast for the Thanksgiving holiday.  Ingram testified that he had purchased and placed the marijuana in the trunk outside of Carver's presence.  Ingram also testified that he placed the handgun under the driver's seat outside of Carver's presence.  Ingram testified that he picked Carver up and told him to throw his luggage in the trunk because he was in a hurry to go to the coast. Ingram testified that he did not intend to sell or distribute the marijuana that was found in the vehicle.  Ingram testified that "[the marijuana] was only for my personal consumption . . . and maybe [to] smoke with a couple of people at holiday time."

¶10.    On cross-examination, when asked about whether Ingram had initially denied having marijuana in the vehicle to Trooper Zimmerman, he testified that he "didn't tell [Trooper Zimmerman] anything."  When asked whether he had been smoking marijuana that day, Ingram testified: "I told [Trooper Zimmerman] not in the vehicle.  Yes, I had smoked weed

4

earlier, but not before I got in the vehicle nor in the vehicle." Ingram then testified that he could not remember if he told Trooper Zimmerman about the marijuana in the vehicle. Ingram also testified that he and Carver had not smoked marijuana in the vehicle during their trip between Grenada and Madison County.

¶11. Ingram testified that the marijuana in the center console had been taken from the larger amount in the trunk. Ingram admitted on the stand: "In the spirit of the holiday, I was going to freely smoke with others and for my own personal consumption."

¶12. Carver took the stand in his defense. Carver explained that on November 23, 2011, Ingram had called him earlier that day about riding to the coast together for the Thanksgiving holiday. Carver testified that he did not smoke marijuana with Ingram that day. Carver testified that he did not know there was marijuana in the trunk. Carver also testified that he did not know about the handgun under the driver's seat. Carver gave the following testimony:

> During [mine and Ingram's] phone conversation, when we [were] talking about, you know, when he was telling me he was going to the coast and all, and I was asking him what we [were] going to do, what [were] we going to do. I was like what [were] we going to do for Thanksgiving. And that's when he told me that, he mentioned, he said that he will smoke some marijuana with me for Thanksgiving.

¶13. When Carver was asked whether he knew where the marijuana was that Ingram had mentioned on the phone, Carver testified: "[Ingram] didn't tell me where it was or if he already had it or, you know, was he going to buy it or whatever. I didn't know." Carver also gave the following explanation regarding his written statement: "[M]y statement said I knew about [the marijuana], because he said he had some for us to smoke for Thanksgiving. He

5

was going to smoke some with me for Thanksgiving." Carver further testified: "I knew he said he had some for us to smoke for Thanksgiving." Later on cross-examination, when asked whether Ingram intended to share the marijuana with him that was found in the vehicle, Carver testified: "Ingram said he had some [marijuana] for me. He had some weed for us to smoke for Thanksgiving."

¶14. The jury found Carver guilty of the lesser-included offense of possession of more than thirty grams but less than 250 grams of marijuana. Carver was acquitted of the conspiracy charge. The trial court sentenced Carver as a habitual offender and subsequent drug offender to six years without the possibility for parole or early release.

¶15. Carver appeals to this Court raising three assignments of error: (1) whether there was sufficient evidence to support his conviction; (2) whether the trial court erred by admitting evidence his prior arrest for auto burglary, prior misdemeanor convictions, and details of his prior conviction for the sale of cocaine; and (3) whether the trial court erred in sentencing him as a subsequent offender under section 41-29-147. Finding no error, we affirm.

**DISCUSSION**

### I. Sufficiency of the Evidence

¶16. Carver argues that the evidence was insufficient to support the guilty verdict. Carver argues that the evidence failed to show that he had knowledge of the marijuana in the trunk. Carver claims that the evidence failed to show that he intentionally and consciously possessed the marijuana by exercising dominion and control over it.

¶17. "In reviewing the sufficiency of the evidence, this Court examines whether there was

6

sufficient evidence to find that the defendant committed the crime beyond a reasonable doubt." *Morgan v. State*, 995 So. 2d 812, 817 (¶16) (Miss. Ct. App. 2008) (citing *Foley v. State*, 914 So. 2d 677, 690 (¶27) (Miss. 2005)). Challenges to the legal sufficiency of the evidence are reviewed in the light most favorable to the State. *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005). "This Court must accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and must disregard evidence favorable to the defendant." *Warwick v. State*, 179 So. 3d 1069, 1073 (¶12) (Miss. 2015) (quoting *Anderson v. State*, 904 So. 2d 973, 977 (¶8) (Miss. 2004)). "If any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt, this Court will not disturb the verdict." *Id*. (citing *Bush*, 895 So. 2d at 843 (¶16)).

¶18.    Possession of a controlled substance may be actual or constructive. *Hudson v. State*, 30 So. 3d 1199, 1203 (¶10) (Miss. 2010). Constructive possession has been summarized by the Mississippi Supreme Court:

> [T]he law states that actual possession is not needed, that constructive possession will do. Nevertheless, the awareness and conscious intent to possess elements apply to both actual and constructive possession. The only difference is that, with actual possession, the drug is actually found on the defendant's person (i.e., in his hands, mouth, pockets, etc.), whereas, with constructive possession, the drug is simply found near the defendant's person in a place over which the defendant exercises dominion or control. Thus, the State has to prove that the defendant was aware of the cocaine and intentionally, but not necessarily physically, possessed it. To test whether the prosecution met this standard of proof in individual cases, each case must be viewed in light of its individual facts and circumstances.

*Glidden v. State*, 74 So. 3d 342, 348-49 (¶20) (Miss. 2011) (internal citations and quotations

7

omitted) (quoting *Hudson*, 30 So. 3d at 1203-04 (¶11)).

¶19.    "There must be sufficient facts to warrant a finding that [the] defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." *Hudson*, 30 So. 3d at 1203 (¶10). Constructive possession may be shown by showing that the drug involved was subject to the defendant's dominion or control. *Id*. Generally, proximity is an essential element, but it is not adequate by itself in the absence of other incriminating circumstances. *Id*. The elements of constructive possession may be proved by circumstantial evidence. *Kittrell v. State*, 806 So. 2d 1140, 1145 (¶13) (Miss. Ct. App. 2001).

¶20.    The evidence is uncontradicted that Trooper Zimmerman noticed a strong odor of burnt marijuana coming from the vehicle when he approached the driver's side of the vehicle. In addition, a small amount of marijuana was found in the center console between Ingram and Carver. Trooper Zimmerman also observed that Ingram's eyes were "very bloodshot." Trooper Zimmerman testified that he "could definitely tell that [Carver and Ingram] had been smoking, or someone had smoked in the[] car, because the burnt smell was there as well." Ingram admitted that the marijuana found in the console was left over from a blunt he had smoked. Plus, he admitted that the marijuana in the blunt had been taken from the larger bags of marijuana in the trunk.

¶21.    Carver testified that he and Ingram had discussed bringing marijuana to smoke that weekend. Although Carver stated that he did not know he had "that much" marijuana in the trunk, Carver stated multiple times that he knew that Ingram had marijuana for them to

8

smoke. Agent Edwards testified that Carver told her during his interview that he knew about the marijuana. Carver's written statement stated: "The marijuana he had, I knew about because he had some weed for us to smoke."

¶22. The issue before this Court is whether or not the evidence is legally sufficient to support the elements of the crime. By admitting that he intended to smoke the marijuana, Carver manifested that he had constructive possession of an undivided interest in the amount of marijuana to be smoked. This undivided amount was subject to Carver's dominion, and he could, when he was ready to, retrieve and smoke it. The dissent emphasizes Carver's supposed lack of dominion and control over the marijuana, but there was no evidence at trial that suggested that Carver did not exercise dominion and control over Ingram's rental car and the marijuana in it. The State met its burden at trial to show that Carver had dominion and control over the marijuana. Carver had access to the rental car and loaded his luggage into the trunk, and there was no suggestion that Ingram limited Carver's access to the trunk.

¶23. Further, Carver admitted that he knew Ingram had marijuana—just not "that much" marijuana. The dissent—after recognizing that Carver planned to smoke Ingram's marijuana that weekend—writes, "However, Carver stated that he 'didn't know [that Ingram] had all that much marijuana until the police pulled it out [of] the trunk!'" (Emphasis in original; first brackets added by dissent). Carver, though, did not state that he "didn't know [that Ingram] had marijuana in the trunk." Instead, he stated that he "didn't know [that Ingram] had all that much marijuana . . . ." (Emphasis in original). Carver agreed to smoke the marijuana, knew that Ingram had the marijuana, and had dominion and control over the marijuana.

9

¶24. We find that there was sufficient evidence to show that Carver was aware of the presence and character of the marijuana, had dominion and control over it, and intended to possess it. In viewing the evidence with all reasonable inferences drawn in the light most favorable to the State, it was sufficient to support Carver's guilty verdict.

## II. Prior-Bad-Act Evidence

¶25. Carver argues that he was denied his fundamental right to a fair trial by the admission of certain evidence in violation of Mississippi Rule of Evidence 404. Specifically, Carver argues that the trial court erred by admitting evidence of his prior auto-burglary arrest and prior misdemeanor convictions. Carver concedes that his prior convictions for the sale of cocaine were admissible under Rule 404(b) for the purpose of proving intent to distribute. However, Carver argues that the trial court erred by admitting the details of the three prior convictions, specifically, his sentence and time served.

¶26. "The standard of review regarding admission or exclusion of evidence is abuse of discretion. Where error involves the admission or exclusion of evidence, this Court will not reverse unless the error adversely affects a substantial right of a party." *Ladnier v. State*, 878 So. 2d 926, 932-33 (¶27) (Miss. 2004).

¶27. "The admissibility of evidence of other crimes or bad acts committed by the defendant is governed by Rule 404(b)." *Denham v. State*, 966 So. 2d 894, 898 (¶18) (Miss. Ct. App. 2007). "Under Rule 404(b), 'evidence of a crime other than the one for which the accused is being tried generally will not be admissible.'" *Mitchell v. State*, 110 So. 3d 732, 734 (¶10) (Miss. 2013) (quoting *Hargertt v. State*, 62 So. 3d 950, 953 (¶8) (Miss. 2011)).

10

¶28. This assignment of error is procedurally barred because Carver failed to make any contemporaneous objections to any of this testimony at trial. *See Hodges v. State*, 14 So. 3d 786, 789 (¶¶8-10) (Miss. Ct. App. 2009) (finding that arguments regarding evidence of prior bad acts were procedurally barred on appeal because the defendant failed to make any contemporaneous objections to the testimony at trial).

¶29. Carver acknowledges that his trial counsel failed to object to the testimony regarding his prior convictions and arrest. As a result, he urges this Court to find plain error. "In order to prevail under the plain-error doctrine, an appellant must show that there was an error in the trial court and that the error resulted in a manifest miscarriage of justice." *Blunt v. State*, 55 So. 3d 207, 211 (¶16) (Miss. Ct. App. 2011). "Furthermore, this Court may only apply the plain-error doctrine when the error complained of affects a defendant's fundamental or substantial rights." *Id.* We cannot say that the testimony about Carver's 1998 burglary arrest, his misdemeanor convictions, and his sentence for his prior sale-of-cocaine convictions resulted in a manifest miscarriage of justice.[1]

### III. Sentencing

¶30. Carver argues that the trial court erred in sentencing him as a subsequent drug offender under section 41-29-147. Carver claims the trial court erroneously believed that it had no discretion in sentencing him.

¶31. Section 41-29-147 provides that "any person convicted of a second or subsequent

---

[1] Alternatively, Carver argues that his trial counsel was ineffective for failing to object to this testimony. We find that this claim is more appropriate for postconviction-relief proceedings. *Bowlin v. State*, 154 So. 3d 883, 886 (¶8) (Miss. 2015).

offense under this article may be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to twice that otherwise authorized, or both."

¶32.    The failure to object at sentencing bars Carver from challenging his sentence on appeal. *See Foster v. State*, 148 So. 3d 1012, 1015-16 (¶10) (Miss. 2014). However, a procedural bar related to sentencing is waived only when the error results in an illegal sentence. *Id*. at (¶12). The Mississippi Supreme Court has consistently held that "sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." *Id.* at (¶13). The maximum sentence for possession of more than thirty grams but less than 250 grams of marijuana is three years. Miss. Code Ann. § 41-29-139(c)(2)(C) (Rev. 2013). Because Carver was found to be a subsequent drug offender under section 41-29-147, the trial court was authorized to double his maximum sentence for the possession of marijuana.

¶33.    Carver's sentence was within the statutory maximum. As a result, this issue is procedurally barred because Carver's sentence was not illegal.

## CONCLUSION

¶34.    Finding no error, we affirm the judgment of the circuit court.

¶35.    **THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF POSSESSION OF MORE THAN THIRTY GRAMS BUT LESS THAN 250 GRAMS OF MARIJUANA, AND SENTENCE AS A HABITUAL OFFENDER AND SUBSEQUENT DRUG OFFENDER OF SIX YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.**

      **LEE, C.J., GRIFFIS, P.J., CARLTON AND GREENLEE, JJ., CONCUR. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY**

**BARNES, ISHEE, FAIR AND WILSON, JJ.**

**IRVING, P.J., DISSENTING:**

¶36.    Carver was convicted of the possession of 3.8 ounces of marijuana that was discovered in the trunk of a car in which he was a passenger.  Carver's half-brother, Ingram, was driving the car, which had been rented for him.  The two were en route from Grenada to Moss Point on the day before Thanksgiving when they were stopped and arrested on I-55 in Madison County.  Ingram, who also had a gun under his car seat and almost $900 in his pockets, claimed sole ownership of the marijuana, which he said was for personal consumption and to share with friends during the holidays.

¶37.    Ingram pled guilty, but Carver proceeded to trial on charges of possession with the intent to distribute more than thirty grams but less than one kilogram of marijuana (Count I)[2] and conspiracy to distribute the same (Count II).  There was evidence from which a jury might have found that Carver was aware of the marijuana's presence and that Ingram and/or Carver had smoked marijuana in the car.  Also, a very small amount (0.2 grams) of marijuana was found in the center console of the car, and Carver had apparently told Ingram he was willing to smoke marijuana with him during the holidays.  The jury acquitted Carver of conspiracy to distribute marijuana but convicted him on simple possession of more than thirty grams but less than 250 grams of marijuana, a lesser-included offense under Count I of the indictment.[3]  The majority now affirms that conviction.  I respectfully dissent because, under

_____

[2] *See* Miss. Code Ann. § 41-29-139(a)(1) & (b)(1) (Rev. 2013).

[3] *See* Miss. Code Ann. § 41-29-139(c)(2)(C) (Rev. 2013).

13

longstanding Mississippi Supreme Court precedent, the evidence was insufficient to show that Carver exercised dominion or control over the marijuana or did anything to aid and abet Ingram's possession of the marijuana.

**FACTS**

¶38. On November 23, 2011, Trooper Zimmerman of the Mississippi Highway Patrol pulled over a car for speeding on I-55 South in Madison County. Ingram was driving, and his half-brother, Carver, was in the front passenger's seat.[4] The car was rented to their grandmother, whom Ingram lived with in Grenada.[5] Trooper Zimmerman testified that he concluded that Ingram and/or Carver had been smoking marijuana because he could smell burnt marijuana and Ingram's and/or Carver's eyes were bloodshot. Trooper Zimmerman asked for consent to search the car, and Ingram agreed. Trooper Zimmerman found approximately 0.2 grams of marijuana in a plastic shopping bag in the center console. He also found a pistol under Ingram's seat. Trooper Zimmerman then searched the trunk of the car and discovered approximately 3.8 ounces (107 grams) of marijuana. The marijuana was divided between two plastic bags. One of the bags was in a manilla envelope that was wrapped in bubble wrap. The other was inside of a white plastic bag that was also wrapped in bubble wrap. Trooper Zimmerman also found a digital scale and an empty ziplock "baggy" in the trunk. Ingram had $893 in cash in his pockets; Carver did not have any money on him.

---

[4] Ingram and Carver have the same father but different mothers.

[5] Carver lived elsewhere in Grenada with his girlfriend.

14

¶39.   Ingram and Carver were taken to the Madison County jail where they were interviewed by Agent Candace Edwards of the Mississippi Bureau of Narcotics.  Ingram readily admitted that the marijuana in the console and in the trunk and the gun under his seat all belonged to him alone.  Ingram told Agent Edwards that he and Carver were on the way from Grenada to his mother's house in Moss Point for Thanksgiving.  Ingram also told Agent Edwards where in Grenada he had purchased the marijuana, that he had paid $300 for it, and how he had gone about wrapping it.  He stated that the small amount of marijuana in the center console was left over from a blunt he had smoked earlier.  He told Agent Edwards that the marijuana in the trunk was for him, Carver, and others to enjoy during the Thanksgiving holidays.

¶40.   Carver gave a written statement to Agent Edwards.  He stated that their grandmother had asked him to travel to Moss Point with Ingram for Thanksgiving.  Carver stated that he "knew nothing" about the gun under Ingram's seat and that the marijuana also belonged to Ingram.  He stated that he "knew about" the marijuana because Ingram had told him that "he had [some] 'weed' for [them] to smoke for Thanksgiving."  Carver said that "being the older 'square,'" as Ingram called him, he had "agreed to 'puff' for the special occasion."[6]  However, Carver stated that he "<u>didn't know</u> [that Ingram] had all that much marijuana until the police pulled it out [of] the trunk!"

¶41.   Ingram testified at trial that he and Carver were on their way to Moss Point to visit Ingram's mother for Thanksgiving.  Ingram testified that his grandmother rented the car for

---

[6] At the time, Carver was thirty-three years old, and Ingram was twenty-two years old.

him because his own car was unreliable. He testified that the gun and marijuana were his. He testified that Carver did not know about the gun or the marijuana in the trunk. He stated that Carver had hurriedly tossed his luggage in the trunk earlier that day and would not have noticed the marijuana, which was not in plain view. Ingram testified that the marijuana was for his own personal consumption and to smoke with others during the holiday. He stated that he was not planning to sell the marijuana. He testified that he had smoked some marijuana earlier in the day but not in the car or with Carver. He stated that the money in his pockets was his savings from work and that he intended to use it to buy Christmas gifts on "Black Friday." He also testified that he and Carver planned to go to the Bayou Classic football game in New Orleans the day after Thanksgiving.

¶42. Carver testified that their grandmother asked him to ride to Moss Point with Ingram, so he did. He stated that he and Ingram first discussed the trip the same day they departed, that Ingram came by his house that evening to pick him up, and that he hurriedly tossed his luggage in the back seat of the car before they left town. He testified that he did not know that there was marijuana or a gun in the car. He explained that when he stated in his written statement that he "knew about" the marijuana, he meant only that Ingram had told him that they would smoke marijuana together during the holiday. Carver maintained that he did not know whether Ingram already had the marijuana or planned to buy it on the Gulf Coast.

¶43. Ingram and Carver were indicted for possession of thirty grams but less than one kilogram of marijuana with the intent to distribute (Count I) and conspiracy to distribute the same quantity of marijuana (Count II). *See* Miss. Code Ann. § 41-29-139(a)(1) & (b)(2)

16

(Rev. 2013). Ingram pled guilty, while Carver proceeded to trial. At trial, Carver acknowledged that he pled guilty in January 2000 to selling cocaine on three occasions in 1998 and 1999. The jury was instructed that Carver's prior convictions could "be considered for the sole purpose of determining [his] motive, opportunity, intent, plan or knowledge" but not "as evidence that he acted in conformity therewith." At the close of the evidence, the circuit court instructed the jury on theories of constructive possession and accomplice liability. The jury found Carver not guilty of conspiracy to distribute marijuana but convicted him of simple possession, *see* Miss. Code Ann. § 41-29-139(c)(2)(C) (Rev. 2013), a lesser-included offense under Count I of the indictment. The court sentenced Carver to six years in MDOC custody as a habitual offender and subsequent drug offender.

**ANALYSIS**

¶44. Carver argues that he is entitled to a judgment of acquittal because the evidence at trial was insufficient to show beyond a reasonable doubt that he possessed the marijuana in the trunk of a rental car in which he was a passenger. Our standard of review on this issue is well settled:

> [I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction. . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Should the facts and inferences considered in a challenge to the sufficiency of the evidence point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that

17

the defendant was guilty, the proper remedy is for the appellate court to reverse and render.

*Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (quotation marks, citation omitted).

The State argues that the evidence was sufficient for the jury to convict Carver either on a theory of constructive possession[7] or as an accomplice to Ingram's possession. These alternative theories of the conviction are addressed in turn below.

### I.  Constructive Possession

¶45.  Since Carver did not have actual possession of the drugs at issue, "the rules concerning constructive possession come into play." *Jones v. State*, 693 So. 2d 375, 376 (Miss. 1997); *see also Fultz v. State*, 573 So. 2d 689, 690 (Miss. 1990) ("The doctrine of constructive possession is a legal fiction used by courts when actual possession cannot be proven."). Our supreme court has decided a number of cases regarding the sufficiency of the evidence necessary to sustain a conviction on a theory of constructive possession. Several of these decisions involved a defendant who, like Carver, was convicted of the possession of a controlled substance found in a car in which the defendant was only a passenger, not a driver or owner.

¶46.  For instance, in *Cunningham v. State*, 583 So. 2d 960 (Miss. 1991), Bob Cunningham was a passenger in a pickup truck owned and driven by Kelvin Sipp. A pill bottle containing crack cocaine was found on the passenger-side floor of the truck. No fingerprints were taken

---

[7] "Possession of a controlled substance may be actual or constructive, individual or joint." *Dixon v. State*, 953 So. 2d 1108, 1112 (¶9) (Miss. 2007). The State proceeded on the theory that Ingram and Carver shared joint constructive possession of the marijuana found in the trunk of the car.

18

from the bottle, and both men denied possessing the cocaine. *See id.* at 961. The supreme

court explained that in order to convict a defendant on a theory of constructive possession,

> there must be sufficient facts to warrant a finding that [the] defendant was
> aware of the presence and character of the particular substance and was
> intentionally and consciously in possession of it. It need not be actual physical
> possession. Constructive possession may be shown by establishing dominion
> or control. Proximity is usually an essential element, but by itself is not
> adequate in the absence of other incriminating circumstances.

*Id.* at 962 (quoting *Curry v. State*, 249 So. 2d 414 (Miss. 1971)) (alteration omitted). Thus,

"[a]n item is one's constructive possession when it is subject to his dominion or control."

*Id.* (quoting *Keys v. State*, 478 So. 2d 266, 268 (Miss. 1985). "A presumption of constructive

possession arises against the owner of premises upon which contraband is found," but "when

contraband is found on premises . . . not owned by a defendant, mere physical proximity to

the contraband does not, in itself, show constructive possession." *Id.* Rather, "the [S]tate

must show additional incriminating circumstances to justify a finding of constructive

possession." *Id.* (quoting *Fultz*, 573 So. 2d at 689)). "In summary, . . . when contraband is

found on premises [not owned by the accused], there must be evidence, in addition to

physical proximity, showing the defendant consciously exercised control over the

contraband, and, absent this evidence, a finding of constructive possession cannot be

sustained." *Id.*

¶47. Applying these principles, the court held that there was insufficient evidence to

convict Cunningham of constructive possession. The court rejected the State's argument that

Cunningham and Sipp "were good friends," so "contraband owned by one was more likely

than not owned by both." *Id.* The court also rejected the argument that the conviction could

19

be sustained because certain aspects of the defendants' testimony was "unbelievable." The court held that unbelievable testimony does not relieve the State of its burden of positively connecting a passenger to drugs found in a vehicle he does not own. *See id.* Finally, in closing, the court emphasized that the State did not attempt to obtain fingerprints from the pill bottle, although it could have done so. *See id.* at 962-63.

¶48.   In *Hamm v. State*, 735 So. 2d 1025 (Miss. 1993), Terri Hamm was indicted for possession with the intent to distribute after almost 200 pounds of marijuana was discovered in the padlocked trailer of an eighteen-wheeler in which she was a passenger but that was driven and owned by her husband, Thomas. *See id.* at 1026 (¶¶5-7). A small amount of marijuana was also found in the cab of the truck. *Id.* at (¶4). The court noted that there was no evidence that Terri had access to the trailer, and the court held that neither the presence of a small amount of marijuana in the cab of the truck nor the fact that Terri had accompanied Thomas from Tennessee to South Texas and then back to Mississippi was sufficient to connect her to the large quantity of marijuana in the trailer. *See id.* at 1027-28, 1031 (¶¶10, 21).

¶49.   In *Jones*, 693 So. 2d 375, a search of a car driven by Imo Kibwe Jawara uncovered marijuana, scales, a gun in the back seat, and several more pounds of marijuana in the trunk. *See id.* at 376. Jawara denied that the marijuana belonged to him, claiming "that it had been placed there by someone else [before he left] New Orleans," while his passenger, Robert Lewis Jones, did not testify at trial. *See id.* The court held that the evidence was insufficient to convict Jones because he did not own or drive the car, and there was "nothing to connect

20

[him] to [the] marijuana except for his presence in the car." *Id.* at 377.

¶50. In *Berry v. State*, 652 So. 2d 745 (Miss. 1995), the State presented evidence that Reginald Berry was a passenger in a car driven and owned by Wilbert Anderson; that Berry and Anderson got out of Anderson's car and into a second car where Anderson purchased cocaine; that Berry and Anderson returned to Anderson's car; that at Anderson's request, Berry placed the cocaine into the car's glove compartment; and that Anderson later began smoking the cocaine in Berry's presence. *See id.* at 748, 750-51. The court held that Berry's "momentary handling" of the cocaine (to place it into the glove compartment) was insufficient to sustain the conviction because "[p]ossession is defined . . . *in terms of the exercise of dominion and control*" over the controlled substance. *Id.* at 751 (emphasis added). The court emphasized that Berry "simply place[d] [the cocaine] in the glove compartment at Anderson's request, in Anderson's car, and in Anderson's presence. *There was no evidence that he owned the drugs, paid for them, or controlled them in any manner*." *Id.* (emphasis added).

¶51. In other cases, the supreme court has held that evidence of constructive possession was insufficient even when the defendant was the driver and sole occupant of a car, though not its owner. In *Fultz*, 573 So. 2d 689, the defendant was the driver and only occupant of his sister's car when he was stopped for driving erratically, failed field sobriety tests, and admitted to having smoked marijuana. *Id.* at 689-91. A small amount of marijuana was found in his wallet, which he admitted was his, and a duffel bag with plastic bags containing a total of seven and a half ounces of marijuana was found in the trunk. *Id.* at 690. The

21

defendant denied any knowledge of the marijuana in the trunk. *Id.* A unanimous supreme court held that the defendant's possession of a small amount of marijuana and admission to having smoked marijuana were insufficient to establish dominion or control over the much larger quantity of marijuana found in the trunk. *Id.* at 691. The court rejected the State's argument that it would have been "illogical" for the car's owner to leave such a large amount of marijuana in a car that she loaned to someone else. *Id.* Finally, the court emphasized that no attempt was made to establish ownership by questioning the car's owner or obtaining fingerprints from the trunk or the bags containing the marijuana. *Id.*; *see also Ferrell v. State*, 649 So. 2d 831 (Miss. 1995) (holding that the State failed to prove constructive possession although cocaine was found in a matchbox next to the driver's seat of a car that the defendant had possessed for approximately fifteen hours).

¶52. Based on these precedents, the evidence presented at trial in this case was insufficient to establish that Carver constructively possessed—i.e., exercised dominion or control—over the marijuana found in the trunk of the rental car. He did not own the car or rent it, and there was no evidence that he was anything other than a passenger. The mere fact that there was a small amount of marijuana in the console is also insufficient to establish dominion and control over the much larger quantity of marijuana in the trunk. *See Cunningham*, 583 So. 2d at 962; *Hamm*, 735 So. 2d at 1030 (¶17); *Jones*, 693 So. 2d at 377. Indeed, the result is no different even accepting that there was sufficient evidence to support an inference that Carver knew that Ingram had smoked marijuana in the car or even smoked some himself. *See Fultz*, 573 So. 2d at 691; *Berry*, 652 So. 2d at 747-48, 750-51. Nor does the fact that

22

Carver and Ingram were related or close support a finding of constructive possession. *See Cunningham*, 583 So. 2d at 962; *Hamm*, 735 So. 2d at 1026, 1031 (¶¶7, 21).

¶53.    Moreover, in one notable respect, Carver's claim is stronger than those of the defendants in the cases discussed above because Ingram unequivocally claimed sole ownership and pled guilty to possession of the drugs at issue. In *Fultz*, the court found it significant that the car's owner was not questioned about the drugs, *see Fultz*, 573 So. 2d at 691, but here the car's driver *was* questioned *and* expressly claimed sole ownership of the drugs. Finally, given Ingram's confession that the drugs were his, it is understandable that the drugs were not tested for fingerprints;[8] however, as discussed above, the lack of such testing is another factor that the supreme court has found significant in cases in which the State must establish constructive possession. *See id.*; *Cunningham*, 583 So. 2d at 962-63.

¶54.    The evidence at trial may have been sufficient for the jury to conclude that Carver knew about the small amount of marijuana in the console, had smoked marijuana in the car at some point, and even was aware that there was a larger quantity of marijuana in the trunk. There was also sufficient evidence for a jury to find that Carver expected that Ingram would allow him to smoke some of the marijuana from the trunk during the holiday. But under our supreme court's precedents, that is insufficient to establish constructive possession because it is insufficient to establish beyond a reasonable doubt that Carver exercised *dominion or*

---

[8] Agent Agent Edwards testified that it would have been "a waste of resources" to test for fingerprints because of the likelihood that many people had touched the bags. She also testified that she "didn't need to" test for fingerprints because she already "had two confession statements that indicated . . . they were both in the vehicle, and they both knew about everything."

*control* over the marijuana in the trunk. The only evidence in the record is that Ingram, not Carver, exercised dominion and control over the marijuana at issue. Put simply, evidence that Ingram intended to share some fraction of *his marijuana* with Carver does not ipso facto transform *all of* Ingram's marijuana into Carver's marijuana or their marijuana. Although Carver was present in the car and possibly aware of the drugs, "[t]here was no evidence that he owned the drugs, paid for them, or controlled them in any manner." *Berry*, 652 So. 2d at 751 (emphasis added). Absent some evidence that Carver exercised control over the marijuana, there is no way to conclude—beyond a reasonable doubt—that anyone other than Ingram possessed it within the meaning of the law.

¶55. The majority find that Carver's admission that he intended to smoke some of Ingram's marijuana is sufficient by itself to establish constructive possession. But Carver's willingness to partake in Ingram's marijuana did not give him "dominion or control" over it. Based on the evidence presented at trial, Carver intended to smoke marijuana because he anticipated that Ingram would share with him, not because he had any right to it. The majority also finds that "there was no evidence at trial that suggested that Carver did not exercise dominion and control over Ingram's rental car and the marijuana in it." However, it was the *State's burden* to prove that Carver exercised dominion or control over the marijuana; it was not Carver's burden to prove a negative or his innocence. *Cunningham*, 583 So. 2d at 962; *Sisk v. State*, 290 So. 2d 608, 610 (Miss. 1974). Moreover, Ingram and Carver both told law enforcement and testified at trial that the marijuana belonged to Ingram alone, not Carver. Finally, the majority finds that there was no proof that "Ingram limited

Carver's access to the trunk." However, in nearly all of the supreme court decisions discussed above—*Cunningham*, *Jones*, *Berry*, *Fultz*, and *Ferrell*—the defendant plainly had "access" to the controlled substance at issue, but the court deemed that fact insufficient to support a conviction. Indeed, in *Berry*, 652 So. 2d at 751, the court reversed and rendered even though the evidence was clear that the defendant knowingly handled the cocaine.

¶56. It is true that when we consider whether the State's evidence was sufficient to sustain a conviction, "the relevant question is whether . . . any rational trier of fact" could have returned a guilty verdict. *Bush*, 895 So. 2d at 843 (¶16). This indicates that the jury's verdict is entitled to substantial deference, and it is. But it is also critical to keep in mind that the evidence must be of such quality that the hypothetical rational fact-finder could rely on it to find the defendant guilty "beyond a reasonable doubt." *Id.* In this case, the evidence was sufficient to raise significant suspicions of guilt. However, consistent with the several supreme court precedents discussed above, the evidence was not sufficient to bridge the gap between suspicion and proof beyond a reasonable doubt that Carver exercised dominion or control over Ingram's marijuana. As Carver's conviction necessarily was based on some degree of speculation, as opposed to evidence, we are bound to reverse and render a judgment of acquittal.

## II. Aiding and Abetting

¶57. The State also argues that Carver's conviction can be sustained on the theory that he was an accomplice to—i.e., aided and abetted—Ingram's possession of the marijuana. To convict a defendant as an aider and abettor, the State must prove beyond a reasonable doubt

that the defendant "deliberately associate[d] himself in some way with the crime," that he "participate[d] . . . with the intent to bring about the crime," and that he "voluntarily participated in its commission with the intent to violate the law." *Spann v. State*, 970 So. 2d 135, 138 n.1 (Miss. 2007) (quoting *Milano v. State*, 790 So. 2d 179, 185 (¶21) (Miss. 2001)). "Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient . . . ." *Id.* The State must prove "beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator." *Id.* Indeed, it is well settled that "the mere presence of a person [during the commission of a crime] is not sufficient [to convict] *even though such person might have approved of the crime*." *Vaughn v. State*, 712 So. 2d 721, 724 (¶11) (Miss. 1998) (quoting *Griffin v. State*, 293 So. 2d 810, 812 (Miss. 1974)) (emphasis added). The State must prove that the defendant was "present at its commission, *doing some act to render aid to the actual perpetrator*." *King v. State*, 47 So. 3d 658, 663 (¶12) (Miss. 2010) (quoting *Smith v. State*, 237 Miss. 498, 506, 115 So. 2d 318, 322 (1959)) (emphasis added).

¶58. In the absence of proof that Carver himself exercised dominion or control over the marijuana at issue, the evidence was also insufficient to sustain his conviction on the theory that he was an accomplice to Ingram. As described above, the evidence was sufficient for the jury to conclude that Carver knew and even approved of the marijuana's presence in the car, but the supreme court has held that knowing approval is insufficient to support an aiding-and-abetting conviction. *Vaughn*, 712 So. 2d at 724 (¶11). Carver also admittedly "agreed to 'puff' for the special occasion"; however, he did not "render aid to" Ingram by being

willing to smoke some of Ingram's marijuana. *King*, 47 So. 3d at 663 (¶12). Stated differently, Carver did not assist Ingram in the possession of the entire quantity of marijuana found in the car's trunk simply because he was willing to partake in whatever amount that Ingram might have decided to share with him. No evidence was presented at trial that Carver offered any other form of assistance. Accordingly, his conviction cannot be sustained on an aiding-and-abetting theory.

## CONCLUSION

¶59. The evidence was insufficient to convict Carver of possession of the marijuana found in the trunk of the rental car. Therefore, I respectfully dissent.

**BARNES, ISHEE, FAIR AND WILSON, JJ., JOIN THIS OPINION.**